PROPRIETORS OF THE WHITE SCHOOL HOUSE *vs.* ICHABOD POST.

In 1792 thirteen residents of a neighborhood not then organized as a school district, united in building a school house, and paid for the same by voluntary assessment founded upon their tax lists. The building became known as " the white school house," The proprietors and others living in the neighborhood

sent children to the school kept in the building until 1819, when the territory was organized as a school district, and the building was afterwards used and kept in repair by the district. In 1811, John Curtiss, a resident of the neighborhood, died, leaving a considerable estate, and a will which contained the following bequest :—" I give for the purpose of supporting a winter school in the White School House in *G*, one hundred pounds, the interest of which shall be annually applied to the support of such school ; and I order my executors to retain said hundred pounds and pay the interest thereof annually for the purpose aforesaid." He appointed David Post and Diodate Post his executors. In 1814 the General Assembly, upon the petition of six of the original proprietors of the school house and of others residing in the neighborhood, passed the following resolution :—" Upon the petition of *J H* and others, proprietors of the white school house in *G*, showing that John Curtiss bequeathed to them one hundred pounds, the interest of which should be applied to the support of a winter school therein : Resolved, that *J H*, *G T*, and *S E*, Proprietors of said White School House, and their successors, are hereby made capable of receiving, holding and managing the said donation, as a corporation for that purpose only ; and the said *J H*, *G T* and *S E* shall be a committee of said proprietors, and are authorized to receive said donation of the executors of said Curtiss and to give suitable discharges therefor, to hold the same, they and their successors in office forever, for the use aforesaid." Provision was also made for holding annual meetings, and appointing successors to the committee and other officers. From the passage of this resolution till 1840, David Post, the senior executor of John Curtiss, who had retained in his hands one hundred pounds of the estate for the purpose, paid the interest on that amount annually to the committee named in the resolution and their successors, or to the teacher of the school upon their order. He died in 1840, leaving a will, by which he made his three sons, of whom Diodate Post, the other executor of John Curtiss, was one, residuary legatees, and in which he made the following provision with regard to the trust fund :—" And my will is that the fund given by John Curtiss to the Proprietors of the White School House, be paid to said Proprietors by my son Diodate, out of the legacy given to him." He left a considerable estate, and the share of Diodate Post was over $2,000, which he received principally in real estate. Diodate Post, after his father's death, paid the interest on the hundred pounds annually to the committee of the proprietors or to some one acting in behalf of the school, until his death in 1860, and the money so paid was applied for the support of the school. By his will Diodate Post made Ichabod Post his executor and residuary legatee, and the latter received more than $4,000 as his share of the estate, which he received with full knowledge of the trust and of the annual payments of interest by his father and grandfather. He proceeded to settle the estate, and the committee of the proprietors presented to him, as executor of Diodate Post, a claim for the whole amount of the fund, which he refused to pay. At this time another year's interest had become due. By statute claims so presented and refused are barred unless suit is brought thereon within six months after such refusal. More than six months thereafter the Proprietors of the White School House as a corporation, jointly with two of the heirs of the original proprietors of the school house and residents of the school district, brought a bill in equity against Ichabod Post, to compel him to account for the fund in his hands

and to pay the annual interest which had then accrued to such persons as the court should find entitled to receive it.   Held :

1. That the resolution of the General Assembly constituted the Proprietors a corporation.

2. That the power given to the corporation " to receive, hold and manage " the fund, implied the power to sue for it.

3. That although by the resolution a committee was appointed, who, with their successors in office, were authorized to receive and hold the fund, yet it did not follow that the trust was to be regarded as vested in them as distinct from the corporation and they the proper party to sue for the fund, but that they were to be regarded merely as a committee acting in behalf and in the name of the corporation.

4. That the rights of the corporation were not affected by the fact that it was not in existence when the bequest was made, since the legislature, then having chancery powers, had full power to appoint a new trustee of the fund ; while the petition of the original proprietors of the school house might be regarded as an application to a court of chancery for a change of trustees.

5. But that, independently of all chancery powers, the legislature had full power to authorize the corporation to bring suit for the fund, such power being only the conceded power of a legislature over remedial proceedings.

6. That while, regarding the charity as a public one, it might ordinarily be the proper course for the attorney for the state to bring suit to enforce it, yet that the corporation could sue here by virtue of the power thus given.

7. That under the power " to hold and manage " the fund, the corporation had the right, if it so preferred, to leave the fund in the hands of the respondent and demand only the annual interest.

8. That it was fairly inferable from the facts that property representing the fund had come down through the estates of David and Diodate Post, and had been received as such by the respondent, who was by the receipt of the same, without having refused or renounced the trust, made a trustee, and was responsible as such.

9. That the respondent, as executor of Diodate Post, who was executor of John Curtiss, became himself executor of the latter, and, assets having come into his hands, was bound as such executor to carry out the directions of the will.

10. That a court of equity had jurisdiction over the matter, whether it be regarded as one of trust or as one of account, it being provided by statute that courts of equity shall have concurrent jurisdiction with courts of law in all matters remediable by action of account.

11. That it was not necessary that the claim should be presented against the estate of Diodate Post, nor that a suit should be brought upon it within six months after the refusal of the executor to pay it.

12. That the joinder of the other petitioners with the corporation was not objectionable, they being heirs of the original proprietors of the school house and having an interest in the performance of the trust, and seeking for a recovery of the money only for the purposes of the trust.

BILL in equity to enforce a trust.   The facts were specially found by the superior court.

In 1792 Gad Talcott and twelve other persons, then residing in the society of Gilead in the town of Hebron in this state, entered into a written agreement to build a school house together, upon a plan described in the agreement, " on the most convenient ground to the south-east corner of the Wells farm in the highway in Gilead Society," and to pay for the same their several proportions according to the amount of their respective lists made in August, 1791. The school house was built in the summer of 1792, and paid for according to the terms of the agreement. A school was kept in it occasionally after it was built and before the year 1814, which was attended by the children of the persons who built the house, and by other children residing within convenient distance, but the territory on which they resided was not then organized into a school district. The house was repaired by the persons who built it, and their descendants, and those who succeeded to the real estate the builders owned at the time the house was built, by voluntary contributions, but no thorough repairs were made until the year 1847, when it was thoroughly repaired by the school district in which it is now situated, which has since kept it in repair. In 1819 the Gilead School Society divided its territory into school districts, and by that division the territory upon which the persons who built this school house and those who sent children to it resided, was incorporated with the North-west School District in that society, and has ever since so continued. The North-west School District has used this house for the purposes of a common district school, and has never had any other school house.

On the 8th of May, 1810, John Curtiss, then residing in Gilead society, made his will, containing a bequest in these words : " I give for the purpose of supporting a common winter school in the White School House, standing near Wells' land in Gilead, one hundred pounds lawful money, the interest of which fund shall be annually applied to the support of such school in said house, or some other house on or near the same place. And I order my executors to retain said hundred pounds, and pay the interest thereof annually for the

purpose aforesaid." He appointed David Post and Diodate Post his executors. He died in 1811, leaving an ample estate. His will was duly proved in the court of probate, and David Post and Diodate Post accepted the appointment of executors, and gave bonds according to law; and in the final settlement of the estate retained in their hands the sum of $333.33, being the equivalent of one hundred pounds as then rated in this state, for the purposes of the above trust.

Twenty-two persons residing in the vicinity of this school house, including six of the original builders of the house, presented a petition to the General Assembly of this state at its session in May, 1814, for an act of incorporation, and the General Assembly at the same session passed the following resolution:—

" Upon the petition of Joseph Hutchinson and others, proprietors of said White School House, showing that John Curtiss bequeathed to them one hundred pounds, the interest of which should be applied to the support of a winter school therein. *Resolved,* That Joseph Hutchinson, Gad Talcott and Sawyer Ellis, Proprietors of said White School House, and their successors, be and they are hereby made capable of receiving, holding and managing the said donation, as a corporation for that purpose only. And the said Joseph Hutchinson, Gad Talcott and Sawyer Ellis, shall be a committee of said Proprietors, who are hereby authorized to receive said donation of said executors, and give suitable receipts and discharges therefor ; to hold the same, they and their successors in office, forever, to and for the use and purpose aforesaid. And said committee are hereby authorized to warn a meeting of said Proprietors to meet at said school house on the first Monday of June next, at nine o'clock A. M., then and there to choose a clerk and such other proper officers as they shall deem necessary ; and said committee shall cause all said Proprietors named in the petition to be warned to attend such meeting by giving each of them personal notice to attend said meeting. And said Proprietors shall have an annual meeting on every first Monday in June, or at such other convenient time and place as they shall think proper, at which meeting they shall

and may choose such other persons to take the places of said committee hereinbefore named as shall by death or resignation become necessary from time to time, and also to choose such other officers and to do such other business relating to the use and enjoyment of said donation as may be necessary, and also to direct by their vote in what manner said meeting shall be warned, and all votes of said meetings shall be determined by a majority of those persons present ; provided that there shall not be a quorum to do business unless at least five of said Proprietors are present in such meeting."

The original builders of this school house, their descendants, and the owners of the real estate that belonged to the original builders at the time the house was built, have regarded themselves as embraced in this resolution, and have been considered the Proprieters of the White School House.   Their first meeting, and the annual meetings authorized in the resolution, have been regularly held to this time, and the proper business of the association has been transacted at these meetings.   All the original builders of the house had died before the present suit was brought and have left numerous descendants scattered in various places.   In no instance has the interest of any of them in this house been inventoried as a part of his estate, or been noticed in any manner in the settlement of any of their estates.   Samuel Talcott, one of the petitioners, is the son of Gad Talcott named in the resolution.   He has always resided in Gilead, and is an owner of a part of the farm which his father owned when the house was built.   William H. Horton, another of the petitioners, is the son of Edmund Horton, and grandson of Ebenezer Horton, one of the original builders of the house.   Edmund and Ebenezer Horton have both deceased, and the said William now resides on a part of the land which Ebenezer owned when the house was built, to which he has succeeded by inheritance.

David Post, one of the executors, was the father of Diodate Post, the other executor, and after the settlement of the estate of John Curtiss he began to pay the interest on the one hundred pounds, the first payment being made in April, 1815.   He paid the interest annually for three years to Joseph Hutchin-

son, and took from him his guaranty against all claims to the money that might arise. In April 1819 he paid it to Sawyer Ellis, and took from him a similar guaranty. From April 1820, to April 1840, he paid the interest to the committee of the Proprietors of the White School House, either to them personally or to the instructor of the school for the time being on the order of the committee. All the payments were made by him as executor of John Curtiss.

David Post died October 4th, 1840. In his last will, which was duly proved in the court of probate, after making certain specific legacies, he gave to his three sons, Diodate Post, Jedediah Post and Elijah Post, all the residue of his estate, both real and personal, not otherwise disposed of, to be equally divided among them, to which bequest the following provision was added : "And furthermore my will is that the fund given by Mr. John Curtiss deceased to the Proprietors of the White School House, so called, be paid to said Proprietors by my son Diodate Post, out of the legacy given to him, and not out of my other estate." David Post left a considerable estate, which was distributed to his sons according to the provisions of his will, the share of Diodate being distributed to him prin cipally in real estate and to the value of over $2,000. Diodate Post began to pay the interest on the one hundred pounds in April, 1841, and continued to pay it annually until April, 1860. He took receipts for the several payments as executor of John Curtiss deceased. These receipts were signed by the Proprietors' committee, or by some of the Proprietors, or by the teachers of the school for the time being and some of the Proprietors. To some of them other names were also signed, but whether they were names of persons having any connection with the Proprietors did not appear. None of the persons signing these receipts signed the same as proprietors. The interest money has always been expended in supporting a common winter school in the school house according to the provisions of the will of John Curtiss, and is needed for the support of such a school. Diodate Post died in April, 1860, and by his will he appointed Ichabod Post, the respondent, his executor. This will was proved on the 17th day of April,

1860, in the court of probate for the district of Hebron, and the respondent accepted the office of executor and gave bonds according to law. The court limited six months from the 17th day of April, 1860, for the presentation of claims against the estate to the executor, and notice of such limitation was given to the creditors as the law prescribes. On the 18th of August, 1860, a claim was presented to the respondent as executor, in the following form : " Dr. Estate of Diodate Post, deceased : To the Proprietors of the White School House (so called) or West School District in Gilead, the sum of one hundred pounds, it having been retained in his possession from the estate of John Curtiss, as a bequest to said Proprietors, for the support of a common or winter school in said house. Hebron, Gilead Society, August 18th, 1860. Samuel Talcott, William L. Ellis, William H. Horton, *Proprietors' Committee.*" On the same day the respondent called upon the said Samuel Talcott and told him he should not allow the claim, and that he might act his pleasure about commencing a suit against him for it. On the 11th of October, 1860, the following claim was presented to the respondent as executor of Diodate Post :—" Dr. Estate of Diodate Post, deceased : To us, the proprietors and heirs of the White School House (so called) in Gilead ; and we hereby do lay claim on the estate of said Diodate Post for the full amount of the bequest of one hundred pounds lawful money, made by Mr. John Curtiss to them and their heirs for the support of a school in said house, which sum has been retained in his hands or possession, and for which we severally and unitedly lay claim, and demand the payment thereof agreeably to the will of the donor. Hebron, October 11th, 1860." This notice was signed by Samuel Talcott, William H. Horton, Samuel H. Ellis, William L. Ellis, Samuel C. Horton, Sophia Post and Hannah Ford. On the 23d of October, 1860, the respondent called upon the said William L. Ellis and Samuel H. Ellis, and notified them that the above claim was not allowed by him. On the 20th day of August, 1861, William L. Ellis and William H. Horton, for themselves and as committee of the Proprietors of the White School House, made a demand upon the respondent for the

interest due on the one hundred pounds, which he refused to pay.

Diodate Post left a considerable estate. In his will, after giving several specific legacies, he made the respondent his residuary legatee, and the latter received more than four thousand dollars from the estate. The respondent had full knowledge of the provisions of the will of John Curtiss, as also of the will of David Post, and he also knew that his grandfather, the said David Post, and his father, the said Diodate Post, paid the interest on the one hundred pounds annually as hereinbefore stated. The respondent proceeded to settle and has settled the estate of said Diodate, but has never paid the interest on the one hundred pounds, or in any way recognized the right of the petitioners, or of any other person or persons, to demand the same from him or from the estate of the said Diodate Post, except what may be inferred from the fact that he tendered the sum of sixty-two cents to the said Samuel Talcott in August, 1860, being the interest from the 1st day of April, 1860, to his father's death.

The petition was brought by " The Proprietors of the White School House " as a corporation, with whom were joined as petitioners the above named Samuel Talcott and William H. Horton, residents of the society of Gilead in Hebron and descendants of the original proprietors. Ichabod Post alone was made respondent. The petition prayed that the respondent be required to account for and pay over to the petitioners, or to such of them as the court should deem entitled to the same, all the interest of the fund then due from the respondent, with a general prayer for relief. The respondent in his answer denied the allegations of the petition, and alleged that no claim had been presented to him as executor by the parties entitled to present such claim within the time limited by law, and that the claim presented had been expressly disallowed by him and no suit had been brought thereon within six months after notice of such disallowance ; he also denied the jurisdiction of a court of equity on the ground that the petitioners had adequate remedy at law.

The case was reserved, on the facts found, for the advice of this court.

*T. C. Perkins* and *Calhoun*, for the petitioners.

1. By the will of John Curtiss a valid trust was created in favor of the owners of the " white school house." There can be no doubt as to either the subject of the trust or its object, for although the *cestuis que trust* are not particularly named, they can not be mistaken. There was no necessity for naming the *cestuis que trust.* Hill on Trustees, 52, and note. *American Bible Society* v. *Wetmore,* 17 Conn., 181. *Bartlett* v. *King,* 12 Mass., 537. 1 Jarman on Wills, 337. The intent of the testator is plain, viz., to create a fund for the support of a winter school in the school house, for the benefit of its owners and to promote general education. The bequest being for a charitable purpose will be liberally construed and strongly upheld by the court. 2 Story Eq. Jur., §§ 1160, 1165. *American Bible Society* v. *Wetmore,* 17 Conn., 181. *Hamden* v. *Rice,* 24 id., 350.

2. The trust thus created has never been terminated. It took effect on the death of the testator and the reception by his executor of the trust fund. The incorporation of the proprietors could not affect it. That was done by an act of the legislature and for the purpose of carrying out the intention of the testator. None but proprietors were incorporated, and all interested in the estate of the testator assented to it. The proprietors were entitled to the benefit of the bequest both as a voluntary association and as a corporation. *Bartlett* v. *King,* 12 Mass., 537. *American Bible Society* v. *Wetmore,* 17 Conn., 181. The court below finds that this fund came into the hands of John Curtiss's executors, and that David Post as one of these executors paid the income of the fund for twenty-five years to the corporation. At the decease of David Post the fund remained in the hands of Diodate Post, and he was chargeable with it, both as co-executor with David and as devisee of land charged with the trust. Hill on Trustees, 49, 171, 303. 2 Swift Dig., 114, 119. 2 Story's Eq. Jur., § 976. *Knapp* v. *Hanford,* 7 Conn., 132. Diodate Post recognized

his obligations as trustee by paying the income for twenty years till his death.

3. The respondent now holds this trust fund, and is accountable for it to the petitioners. 1st. As executor of Diodate Post. 2 Story's Eq. Jur., § 976. Hill on Trustees, 171, 223 303. 1 Swift Dig., 450. The probate of the will of his testator was an acceptance of the trust. Hill on Trustees, 214. *Baldwin* v. *Porter*, 12 Conn., 473. He has never properly disclaimed to act as trustee, but holds the property. Hill on Trustees, 223. 2d. As devisee of Diodate Post. The same land given by David Post to his son Diodate and charged with the payment of this trust fund, is now the property of the respondent, who received it with full notice of all the facts. No equitable doctrine is more firmly established than that a court of equity will in all cases follow the subject matter of a trust into the hands of the holder, (unless he be a purchaser for a valuable consideration without notice,) and treat him as trustee. 2 Swift Dig., 114. Hill on Trustees, 49, 171. 2 Story's Eq. Jur., § 976. The respondent admitted the liability of his testator by paying the interest which had accrued between April 1st, 1860 and the testator's death. The annual payment to the corporation for forty-five years of the income of the fund by the respondent's father and grandfather, under whom he claims, with the assent of all interested, estops him from denying his liability as trustee. It also raises an irresistible presumption in favor of the regular constitution and rights of the corporation. 1 Greenl. on Ev., §§ 46, 47, 293. *Cambridge* v. *Lexington*, 17 Pick., 222. *Grote* v. *Grote*, 10 Johns., 402. *Schauber* v. *Jackson*, 2 Wend., 36.

4. The petitioners have no such obvious adequate and complete remedy at law as will oust a court of equity of its jurisdiction. *New London Bank* v. *Lee*, 11 Conn., 112. *Chipman* v. *City of Hartford*, 21 id., 488. *Hurlbut* v. *Phelps*, 30 id., 42. This being a trust is under the especial charge of a court of equity. 2 Story Eq. Jur., § 962. Hill on Trustees, 518. The bill calls for an account of the income, which is also a peculiar province of equity jurisdiction. 1 Story Eq. Jur., § 67. A court of equity does not lose its jurisdiction

because courts of law have enlarged their jurisdiction, and if it has jurisdiction for one purpose it has for all. 1 Story Eq. Jur., § 67. *Isham* v. *Gilbert*, 3 Conn., 166. *Middletown Bank* v. *Russ*, id., 139. This is not the case of a trustee holding a liquidated sum of money to be paid over on demand. An action at law will not lie against a trustee while the trust remains open. Hill on Trustees, 367. *Newhall* v. *Wheeler*, 7 Mass., 198. *Bulkley* v. *Stewart*, 1 Day, 130.

5. The rights of the petitioners are not affected by the disallowance of their claim by the respondent as executor of Diodate Post. 1st. A *cestui que trust* is not a creditor within the meaning of the statute relating to the presentation of claims. Rev. Stat., tit. 14, § 35. 2 Story Eq. Jur., § 1520 *a*. Hill on Trustees, 263. 2 Swift Dig., 121. Charitable trusts are not affected by statutes of limitation. Hill on Trustees, 266, 468. As the executor becomes the trustee of the unexecuted trusts of his testator, there is no more necessity for the presentation of his claim by the *cestui que trust* to the executor than to his testator when living. A legatee is as much within the statute as a *cestui que trust*. 2d. In the present case the petitioners had no right to demand the trust fund, but merely its income. 3d. They seek only to recover the interest which became due April 1, 1861, long after the time limited for the presentation of claims had expired. *Griswold* v. *Bigelow*, 6 Conn., 258.

*Hyde* and *R. Welles*, for the respondent.

1. The petitioners are not *cestuis que trust* of this charity and have no interest in it whatever. The bequest of John Curtiss was not to the petitioners, nor for their benefit either directly or indirectly, but was exclusively to his executors as trustees for the benefit of the winter school. Such was the intent of the testator and the court will be bound by it. *Lockwood* v. *Weed*, 2 Conn., 287. The claim of the petitioners that they are, or were formerly, the proprietors of the " white school house," if true, gives them no interest in this donation to the school itself. The title to the fund is not affected by the ownership of the school house. The real

*cestuis que trust* are the children from year to year attending the common school which was to be kept in the neighborhood where the donor dwelt. In other words this was a *public charity*. The public are the *cestuis que trust*, for the whole public are at some time children. But the petitioners are not the public ; nor the agents of the public. They have no right to represent the public. Therefore they are not proper parties to bring this suit. As this suit is brought to *enforce a trust* against the *trustee*, it must be brought by the *cestui que trust*, and as this trust is for a *public charity* there are no *certain persons* entitled to it so as to be able to sue in their own names. Perhaps the attorney for the state might bring such an action. In other states and in England it has been decided that such suits must be brought in the name of the attorney general. *Female Association* v. *Beekman*, 21 Barb., 569. *Beekman* v. *Bonsor*, 23 N. York, 299. *Owens* v. *Missionary Society*, 14 id., 384, 409. *Baptist Asso.* v. *Hart's Exrs.*, 4 Wheat., 28. *Hanne* v. *Stevens*, 1 Verm., 110. Calvert on Suits in Equity, 211, 214. Story's Eq. Pl., §§ 207, 222. The petitioners sue as a corporation. They are not a corporation. The resolution of the General Assembly, upon which they rely, is not an act of incorporation. It does not purport to be. It is a mere license. The legislature could not constitutionally clothe them with any authority more ample than that conferred by a license. But if the resolution should be construed to be an act of incorporation, then as the corporation had no existence at the time of the decease of John Curtiss, when the bequest became operative, there was nothing for it to operate upon, and it was void. Its incorporation since can make no difference ; it can not relate back. For all the purposes of this case the question is precisely the same as if the petitioners had remained unincorporated to the present time. *Owens* v. *Missionary Society*, 14 N. York, 384. *Baptist Association* v. *Hart's Exrs.*, 4 Wheat., 28. If then the bequest was to the proprietors of the " white school house " as individuals, or as an unincorporated community or association of individuals, it was void both in equity and in law. 1 Swift Dig., 135. Shep. Touch., 235.

*Lockwood* v. *Weed*, 2 Conn., 287. *Greene* v. *Dennis*, 6 id., 292. *Brewster* v. *Mc Call's Devisees*, 15 id., 274, 297. *Baptist Association* v. *Hart's Exrs.*, 4 Wheat., 1. *Jackson* v. *Cony*, 8 Johns., 301. *Barker* v. *Wood*, 9 Mass., 419. *Owens* v. *Missionary Society*, 14 N. York, 385. But if the petitioners had been incorporated at the time when the bequest of Curtiss became operative by his decease, it would avail them nothing in this suit; because, first, they bring this action as *cestuis que trust* against the respondent as the *rightful trustee*, whereas the act impresses upon them the character of trustees, and makes them succeed to the powers and duties of the trustees appointed by Curtiss, so that they practically ignore the act in this suit, and do not sue in the character impressed upon them by it; and in the next place, this action does not appear to be brought, and is not claimed to be brought, in the name of the proprietors' committee, who alone are authorized to act for the proprietors. Nor do the petitioners acquire any rights which will avail them in the present suit, by means of the will of David Post. His bequest may be construed to operate, either, first, as a valid bequest of the Curtiss fund to the petitioners, or secondly, as simply a direction specifying what particular portion of his estate should be charged with this fund and the payment of the annual interest. If the first construction be correct, then the petitioners became immediately upon the decease of David invested with the legal title to the fund as trustees, and the fund in the hands of Diodate became a debt charged upon his legacy, and could have been recovered in an action at law. *Lamb* v. *Smith*, 1 Root, 429. *Spalding* v. *Spalding*, 2 id., 271. *Goodwin* v. *Chaffee*, 4 Conn., 163. *Knapp* v. *Hanford*, 6 id., 170. *Same* v. *Same*, 7 id., 132. *Adams* v. *Spalding*, 12 id., 350. And if they had any equitable interest in the fund under the Curtiss bequest, it became merged in the higher legal title given them by David. *Hopkinson* v. *Dumas*, 42 N. Hamp., 296. And at the decease of Diodate they having made claim to it should have enforced the claim by an action at law, but having allowed more than six months to elapse after notice that their claim was disallowed by the executor, their claim

became forever barred, so that they can not now claim any thing as creditors of the estate, in which character they presented their claim to the respondent. Rev. Stat., tit. 14, § 37. *Spalding* v. *Betts*, 6 Conn., 28. If the second construction be correct, as David Post was simply ·a co-trustee of this fund, and as the power of substitution was not given by Curtiss to his executors, they could not either of them exercise this power by appointing by will or otherwise a new trustee. This is the common law. Hill on Trustees, 176, 212. This power by our statute law is given to the court of probate. Rev. Stat., tit. 14, § 23. If the resolution of the General Assembly supplied this defect, we have just considered that aspect of the case, and it would be fatal to the petitioners. David Post as co-trustee had no power to impress any other character upon the fund than it had when it came into his hands. He had no control over his co-trustee, to order him to pay the fund into the hands of the proprietors when his testator had ordered him to retain it. His co-trustee was equally responsible for the fund and its proper administration with himself. Hill on Trustees, 305.

2. The respondent is not trustee of this charity, and is not liable to account for its due administration. The original executors of John Curtiss were, after the final settlement of his estate, acting only in the character of trustees, and not as executors. Hill on Trustees, 215, 237, 238. *Phillipo* v. *Munnings*, 2 Mylne & Craig, 309, 315. *State* v. *Hearst*, 12 Misso., 365. *Knight* v. *Loomis*, 30 Maine, 204. *Hitchcock* v. *U. S. Bank*, 7 Ala., 386. The respondent as executor of a surviving trustee does not thereby become trustee of the person to whom his testator was trustee. 2 Swift Dig., 118. Rev. Stat., tit. 14, § 23. *Knight* v. *Loomis*, 30 Maine, 204. *Hawley* v. *Ross*, 7 Paige, 103. If it should be held that the respondent, by accepting the office of executor of his father, a surviving trustee, thereby by operation of law became also trustee of this charity, then he has disclaimed this office by his subsequent conduct, if such be possible. *Ayres* v. *Weed*, 16 Conn., 291. But, if the respondent should be considered as trustee, the fund has not been traced into his hands.

There is no proof that he ever received it. He is only one of several legatees of his father. The fact that his father or grandfather had it affords no legal presumption that it came to his hands. *Knapp* v. *Hanford*, 6 Conn., 170.

DUTTON, J. In 1792 thirteen residents of the society of Gilead in the town of Hebron, built a school house called " the white school house," of which of course they were the proprietors. In 1811 John Curtiss, a resident of the society, by his will, executed on the 10th of May, 1810, made the following bequest :—" I give for the purpose of supporting a common winter school in the white school house standing near Wells' land in Gilead, one hundred pounds lawful money, the interest of which shall be annually applied to the support of such school in said house or some other house on or near the same place. And I order my executors to retain said hundred pounds and pay the interest thereof annually for the purpose aforesaid." He also appointed David Post and Diodate Post, who were father and son, his executors. They accepted the trust and applied the interest for the benefit of the school. In 1814, on the application of the proprietors of the school house, they were made a corporation, " capable of receiving, holding and managing the said donation, as a corporation for that purpose only." Three of the proprietors were appointed a committee " to receive said donation of said executors, and give suitable receipts and discharges therefor, to hold the same, they and their successors in office, forever, to and for the use and purpose aforesaid." Provision was also made for holding meetings of the corporation, choosing officers, and especially appointing successors to the committee. The interest was regularly applied as directed, sometimes through the agency of the committee and sometimes otherwise, until the death of David Post in 1840, who, after making certain legacies, devised the residue of his estate both real and personal to his three sons, Diodate Post, Jedediah Post and Elijah Post, equally, and made this further provision with regard to the Curtiss fund in his hands :—" And furthermore my will is that the fund given by Mr. John Curtiss deceased to the pro-

prietors of the white school house so called, be paid to said proprietors by my son Diodate Post, out of the legacy given to him, and not out of my other estate."

We think that in the absence of any proof to the contrary this shows sufficiently that Diodate Post, after the death of his father, held this fund; and he evidently so regarded it himself, as he annually paid the interest, so that it was applied to the support of the school, until his death in 1860. He made a will appointing Ichabod Post the respondent his executor, and giving to him as residuary legatee more than four thousand dollars. The committee of the corporation, and certain heirs at law of the original proprietors, presented a claim against the respondent as executor of Diodate Post, for the one hundred pounds and the interest that had accrued. He admitted the claim for interest up to the death of Diodate Post, and tendered that amount, but denied all further liability and gave notice to that effect. No suit was brought within the time limited by the statute as to claims which are thus disallowed.

The grounds of defense in the case, with the exception perhaps of the statute of limitations, are chiefly of a technical character. The facts which have been stated, and many others found by the court which it has not been thought necessary to detail, show beyond any reasonable doubt that the respondent holds in his hands over three hundred dollars, to which he has not a shadow of claim, and which ought to be sacredly preserved and applied for the benefit of education in the white school house, according to the benevolent purpose of the donor.

We should entertain a strong feeling of regret if we were compelled by the strict rules of law to allow the respondent to divert this donation from its object and enjoy it himself. Still, if we found the objections to granting relief insuperable, we should not feel warranted in over-riding well established rules and principles, to do justice in a particular case.

The general grounds taken by the respondent are, that the petitioners have no right to sue for this money, and if they have, that their only remedy was in a form of action which they have neglected to bring until it is too late. In the first

place, he says that the petitioners have no standing in court; that, as to the principal petitioner, the corporation, it was not in existence when the gift took effect; that no title ever passed even prospectively to any such body; and that if the corporation has any right to sue, it is to recover the principal as well as interest, and not the interest alone.

We think that this corporation can bring this suit. The trustees under the will of John Curtiss had no personal interest whatever. The discharge of the duty of taking care of this fund and applying the interest, was apparently a mere burden. The whole beneficial interest was vested, either in the proprietors of the white school house or in the public at large. If it was in the proprietors, it could be treated like any other trust fund. Nothing is more common than for a court of chancery to change trustees, or to supply them if necessary to carry out the purposes of the trust. In 1814 the legislature exercised various chancery powers, and no question has ever been made of their ability so to do prior to the adoption of the constitution in 1818. Besides, the corporation was created at the request of the proprietors and was constituted chiefly or wholly of them. The application to the legislature may be regarded therefore as one made by them to have the legislature, acting as a court of chancery, remove the old trustees and appoint a new one. As this would be within the undisputed powers of a court of chancery, it is unnecessary to inquire whether there were or were not sufficient reasons for the change. *Luke* v. *DeLambert*, 4 Ves., 592.

But the legislature had full power to create this corporation and vest it with the authority to receive and hold, and of course sue for and collect this money, independent of any chancery powers. The legislative department has full jurisdiction over all merely remedial proceedings. In *Hine* v. *Belden*, 27 Conn., 384, it was held that it was competent for the General Assembly to change a pending suit from a criminal to a civil one. The statute regarding estates authorizes suits to be brought in the name of the judge of probate to collect debts and legacies. Doubtless an act authorizing all civil suits to be brought in the name of some public officer would

be constitutional, and might be made to apply to past as well as future causes of action. In the present case the legislature has merely authorized a suit to be brought for the benefit of the *cestuis que trust* of this legacy, in the name of this corporation.

One or two objections which have been raised require to be noticed, although of but little weight. One is, that the act in question did not constitute a corporation. It is, to say the least, very late in the proceedings to raise such an objection. But it is clearly without foundation. The whole object of the proceeding was to create a body able to hold property. Besides, by the very language of the act, the grantees were to act as a corporation.

It is further insisted that the suit should have been brought by the committee, as it is provided that they are to call for and receive the donation. There can be no reasonable doubt however that they were to act merely as a committee, that is, as agents of and in the name of the corporation.

It is further claimed, and probably correctly, that this is a charity or public trust; that in England in such cases the Attorney.General is the person to bring suits to enforce the trust, and that by analogy this suit should have been brought by the attorney for the state. We think this probably would have been the proper course in the absence of any action of the legislature in this particular case. In England the Attorney General brings the suit because he represents the king, the guardian of the rights of the public. But there can be no doubt that Parliament, of which the king is a constituent part, could authorize some other person to do it in all cases or in some particular case. Here the legislature of this state expressly authorized this corporation to receive this money and impliedly to sue for it, and it is immaterial whether a suit could be brought by the attorney for the state or not.

It is claimed further that the other petitioners could not be joined with this corporation in bringing this suit for want of interest. We think this claim is unfounded. These other petitioners do not seek to recover the money themselves They ask merely that the court would order that it be paid to such of the petitioners as the court may find to be enti-

tled to receive it; in other words, that the corporation may receive it. As descendants of the original proprietors of the white school house, however, they have an interest in that building. The money is to be expended for a school to be kept for the present in that building. Their rights therefore will be affected by the use of the money in the continuance of that school, so far at least as to give them a right to be heard, and if they are to be made parties at all, it is proper that they should if they please be petitioners, because they are in favor of having relief granted by the court. We can not see how the defendant can be prejudiced in the least by the joinder of them as petitioners.

In the second place, it is strongly insisted that the respondent can not be treated as a trustee of this fund. It is admitted that he might have been made liable as executor, if the proper steps had been taken, but it is said that the executor of a trustee is not himself a trustee, unless he voluntarily becomes so. But Ichabod Post is an executor of Diodate Post, and Diodate Post was an executor of John Curtiss. By a familiar rule of law, Ichabod Post is thereby the executor of John Curtiss. As such it is his duty to execute the will of the testator regarding this donation. He might have excused himself by showing that no assets came into his hands, but this he has wholly failed to do. On the contrary the facts found by the court below show that this identical fund has come into his hands with full knowledge of the trust. Enough appears to charge him, even if he has not become the executor of John Curtiss.

In the third place the respondent resorts to the objection that the petitioners had adequate remedy at law. He insists that their right, if any, is to collect the principal as well as the interest, and that they could do this by an action of assumpsit.

We think it is immaterial whether the petitioners could maintain assumpsit or not. The respondent we have seen voluntarily assumed the situation of trustee. It does not lie in his mouth to disclaim that position. All trusts are peculiarly within the jurisdiction of a court of equity.

The corporation in this instance is authorized to manage as well as to receive and hold this money. It can allow the respondent to retain it and account for the interest, although it may have the right to demand and collect the principal. Besides, the most appropriate remedy at law to recover the money would be the action of account, and by statute concurrent jurisdiction is given to courts of equity with courts of law, as to all matters remediable by that action. Acts of 1855, chap. 55.

This view of the case puts an end to the objection that this suit was not commenced within the time limited by statute, where a claim against an estate has been presented to an executor or administrator and payment refused. There was no need of presenting the claim at all. The defendant as executor knew of this trust, and was bound by the principles both of law and morality to carry the will of the donor into effect.

The superior court is therefore advised to decree the payment to the corporation of the interest which had become due when the petition was brought.

In this opinion the other judges concurred.