HUGH DAILEY, AND TILTON E. DOOLITTLE, STATE'S AT-
TORNEY, v. THE CITY OF NEW HAVEN AND OTHERS.

New Haven and Fairfield Cos., Oct. T., 1890. ANDREWS, C. J., CAR-
PENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

A will gave, under different trusts, a large sum to sundry public charitable objects in the city of New Haven, and among them one fifth of the sum to the city to be held in trust and the income applied for the aid of "deserving indigent persons, not paupers;" with a provision that if any of the trusts should not be accepted the amount intended therefor should be divided proportionately in augmentation of such as should be accepted. A committee of the common council of the city, to whom the matter was referred, recommended that the bequest be not accepted. Before final action by the council the state's attorney and a tax-payer of the city brought a suit for an injunction to restrain the city from refusing to accept the bequest. On a demurrer to the complaint it was held—

1. That the city had no power to take and administer such a trust, it not being within the powers given it by its charter, and it not being liable, and having no legal right, to aid in the support of "deserving indigent persons, not paupers."

2. But that if the city had power to accept and administer such a trust, yet it had an equal right to decline it, no duty to accept it being imposed upon it by its charter or by the law.

3. That the declining of the trust would be only the exercise by the council of its discretion and judgment in a case proper for such exercise, and its action would not be restrained by a court of equity in such a case.

4. That, taking all the provisions of the charitable bequests together, it could not be regarded as the intention of the testator that a refusal on the part of the city to accept the trust, should defeat the trust.

5. That the gift in trust to the charitable object named was a valid one, not affected by either the want of power in the city to accept it or by its action in refusing to accept it, and that a court of equity would, if necessary, appoint a trustee to take charge of and administer the trust fund.

6. That the statutes giving power to courts of probate to appoint trustees in such cases, do not deprive a court of equity of its jurisdiction; but that, while the Superior Court retains its jurisdiction, it will exercise it only in cases where, except for its action, a legal trust would be defeated for want of a trustee to administer it.

7. That it is ordinarily the duty, and is clearly the right of the state's attorney, to bring suits to enforce public charitable trusts.

8. That in this case it would be his duty to apply to the probate court for the appointment of a trustee.

9. That in case of his failure to do so, such application might be made by any individual of the specified class of beneficiaries.

[Argued October 29th, 1890—decided March 3d, 1891.]

SUIT for an injunction against the declining, by the common council of the city, to accept and administer a testamentary trust under the will of Philip Marett; brought to the Superior Court in New Haven County. The defendants demurred to the complaint, and the case was reserved upon the demurrer for the advice of this court. The case is fully stated in the opinion.

*L. Harrison* and *J. W. Alling*, for the plaintiffs.

*W. K. Townsend*, for the city of New Haven.

*H. T. Blake*, for the trustees of the estate of Philip Marett.

*S. E. Baldwin*, for the executors, and the residuary legatees of Ellen M. Gifford.

*H. Stoddard* and *J. W. Bristol*, for Yale University.

SEYMOUR, J. The will of Philip Marett, late of the city of New Haven, gives one fifth of the remainder of certain estate " to the city of New Haven, to be held in trust by the proper authorities, and the income to be applied through such agencies as they see fit, for the supply of fuel and other necessaries to deserving indigent persons not paupers, preferring such as are aged or infirm."

On the 10th day of June, 1890, acting upon the report to the court of common council of a committee to whom was referred " the matter of the acceptance or rejection of the trust of $130,000 bequeathed to the city by Philip Marett, deceased, for the use of indigent poor, not paupers," the board of aldermen of the city passed a resolution " that the city of New Haven do not accept the bequest to it for the benefit of indigent poor not paupers, under and by the will

of the late Philip Marett." Thereupon a complaint was brought by Hugh Dailey, a resident tax-payer and elector of the city and town of New Haven, and Tilton E. Doolittle, as the state's attorney for New Haven County, against the city, its mayor, and the other parties interested in the remainder, one fifth of which was given to the city of New Haven as aforesaid. The complaint contained, among other allegations, the following:—

" 7. A resolution is pending before the court of common council of the city of New Haven, in and by which it is proposed that the city of New Haven shall refuse to accept the trust of said one fifth part of said residuary estate so given in trust as aforesaid. Such resolution has been adopted by the individuals who compose the board of aldermen, part of said court of common council, and such resolution is likely to be adopted by the individuals who compose the board of councilmen of said city, and is likely to be approved by the individual who holds the position of mayor of said city.

" 8. The members of said court of common council and the mayor of said city have no authority to decline the acceptance of said one fifth part of said residuary estate, so given in trust as aforesaid.

" 9. The trust above mentioned, created by the will of said Marett, is a public charity, and the beneficiaries of said charity are not represented by the members of said court of common council or the mayor of said city, nor have such members of said court or said mayor any right to annul and destroy the public charity created by said will.

" 10. The due administration of the public charity created by said will will tend to largely decrease the expenses for the care of paupers in the city and town of New Haven, and·thus render unnecessary to a considerable extent the imposition of taxes to be paid for the support of such paupers ; and the city of New Haven is wholly embraced within the limits of the town of New Haven and includes nineteen twentieths of the population and taxable property of the town of New Haven.

"11. The city of New Haven and the Young Men's Institute and "—(naming the other beneficiaries of said residuary estate,) "all claim an interest in said fifth part of said residuary estate, in case the city of New Haven declines and refuses to accept the trust created by said will, but none of said corporations propose to carry out the charitable intentions of the testator, as stated in the clause of said will herein referred to, even if they receive the funds in question.

"12. In case the city of New Haven refuses to accept the performance of the duties of said trust, the said Blake and Beardsley " (trustees, who now hold the remainder ready for distribution) "propose to regard the trust in favor of the public charity, as above described, terminated, and to pay over said sum of over $130,000, being the amount of said trust fund, to the city of New Haven in trust for library purposes, to " (naming the other beneficiaries of said residuary estate) "for purposes other than the supply of fuel and other necessaries to deserving and indigent persons, not paupers, in the city of New Haven, preferring such as are aged and infirm, as stated in said will."

Following these allegations was a prayer for judgment—"1st. That the city of New Haven, and its mayor, and the members of its court of common council, be enjoined from declining to accept said trust fund, or from declining to carry out the provisions of said will relating to the administration of said trust fund.—2d. If it shall be held that the court of common council of the city of New Haven have the power to refuse to accept said trust and to refuse to administer the same, and if the city of New Haven does refuse to accept or administer said trust, then the plaintiffs pray this court, as a court of equity, to take said fund so given for public charity, as stated in said will, into its own care, and to appoint suitable trustees to receive the same from said Beardsley and said Blake, and administer said fund according to the true intent and meaning of the said will of Philip Marett."

A temporary injunction was granted restraining the mayor of New Haven from approving any resolution or vote of the

court of common council of the city, whereby the city shall decline to accept the funds so given to the city by the will of Philip Marett, in trust for the public charity stated in the complaint. Thereupon a statement of facts was agreed upon by the plaintiffs, the city of New Haven, and Henry F. Peck, mayor of the city, they being the only parties that, up to that time, had entered an appearance. At their request the Superior Court reserved the case and the questions of law thereon arising for the consideration of this court. Subsequently, by leave of the court, the complaint was amended, and E. Edwards Beardsley and Simeon E. Baldwin were made parties defendant thereto and duly cited to appear. They appeared, assented and agreed to the agreed statement of facts theretofore filed, made answer to the complaint and filed a cross-complaint. Afterwards the city of New Haven and the mayor filed a demurrer to the complaint, and the case stands before us upon the questions arising upon the pleadings and upon the agreed statement of facts. The statement contains a series of questions which the court of common council instructed the city attorney to incorporate therein, and which, it is agreed in the statement, shall be reserved for the advice of this court.

The first question in natural order relates to the power of the Superior Court to grant the prayer of the complaint and enjoin the city of New Haven and its mayor and the members of its court of common council from declining to accept the trust fund or from declining to carry out the provisions of the will relating to the administration of the trust fund.

We unhesitatingly advise the Superior Court that it has no such power. If the city has a right to accept a trust of this character and administer it, which we shall presently consider, yet it has an undoubted right to decline to accept it. How can it be otherwise? It is not a duty imposed upon it by its charter or ordinances to accept and administer it. No one can compel another to accept a trust by naming him as trustee. If, in a given case, a refusal to accept would defeat the trust, it would be because the instrument creating it so provided. Courts will see to it that trusts do not

fail because of the refusal of the trustee named to act, unless it is certain that the settlor so intended. And this rule, which is a universal one, would have no meaning if trustees were legally bound to act when appointed. The law is well settled in respect to the power of courts to restrain the action of bodies like courts of common council. In the very recent case of *Whitney* v. *City of New Haven*, 58 Conn., 450, this court held that whenever such bodies are acting within the limits of the powers conferred upon them, and in due form of law, the right of courts to supervise, review or restrain is exceedingly limited. With the exercise of discretionary powers courts rarely, and only for grave reasons, interfere. Those grave reasons are found only where fraud, corruption, improper motives or influences, plain disregard of duty, gross abuse of power or violation of law, enter into or characterize the result. Difference in opinion or judgment is never a sufficient ground for interference. Courts of common council exercise an authority delegated by the General Assembly, which carries with it corresponding duties, and vests the delegated body with the right and duty to exercise the discretion and judgment incidental to the proper performance of what is delegated. Several other decisions in our state recognize the same sound doctrine.

The next question to be considered is, whether the city of New Haven can legally become trustee of the fund and administer the same. We shall look in vain in its charter for any express authority authorizing it to accept and administer trusts of the nature of that created by the will under consideration. Nor is the city of New Haven under any legal liability to support or aid " deserving persons not paupers "; indeed it has no legal power so to do. The rule is well established, and supported by numerous well considered cases, that municipal corporations have only such powers as are expressly granted in their charters or are necessary to carry into effect the powers so granted. It is a rule of great public utility, and courts should recognize and enforce it as a safeguard against the tendency of municipalities to embark in enterprises not germane to the objects for

which they are incorporated. Even towns, which, under our peculiar political history and policy, it was strongly urged in *Webster* v. *Town of Harwinton*, 32 Conn., 131, possessed, because of their independent character, large original powers, were held to have no original or inherent powers whatever, but only such as are either expressly granted by the legislative power of the state or are necessary to the performance of their duties as territorial and municipal corporations.

We conclude then, without further discussion, that the city of New Haven cannot legally become trustee of the fund under consideration and administer the same. Numerous other cases might be cited in support of this position, but we only refer to the *City of Bridgeport* v. *The Housatonic R. R. Co.*, 15 Conn., 475; *New London* v. *Brainard*, 22 Conn., 553; *Abendroth* v. *Town of Greenwich*, 29 Conn., 356; *Gregory* v. *City of Bridgeport*, 41 Conn., 76.

It was claimed in the argument that if the city has no power to accept and administer the trust, then it has no power to decline it. We do not see the force of this claim. An offered trust may surely be declined upon the very ground of want of legal power to accept. That the effect of a refusal of what could not be legally accepted might be open to discussion cannot limit the right. A case might easily arise where it would be highly proper that a trust should be publicly declined for that reason, so as to leave other questions which might arise under it unembarrassed by any claim which might be made from the failure of the trustee to decline.

It may be fairly assumed that, when the temporary injunction is removed, the city of New Haven will decline, in terms, the trust in dispute. But, whether it declines it or not, yet, having no legal power to accept and administer it, the question remains whether, in accordance with the second prayer of the complaint, the Superior Court, as a court of equity, will take the fund into its own care and appoint a trustee to administer it under the will. This can only be answered after a careful consideration of the true meaning

and effect of the words " should any of the trusts not be accepted," which precede the provision made for that emergency.

The will, after making certain bequests and devises, continues as follows : " The balance or remainder of such trust estate * * * I hereby direct shall * * * be appropriated, distributed and disposed of as follows, namely : One fifth part to the Connecticut Hospital Society in trust, the income to be applied to the support of free beds for the benefit of poor patients in said institution, giving preference to those incurably afflicted, if such are admissible. One fifth part to the city of New Haven " (being the clause in controversy and already herein quoted at length.) " One fifth part to the President and Fellows of Yale Collge, in trust, the income to be applied to the support of scholarships, or to such other purposes in the academical department as they may judge expedient. One tenth part to the New Haven Orphan Asylum, to be held in trust, and the income applied to the support of poor inmates therein. One tenth part to the St. Francis (Catholic) Orphan Asylum in New Haven, to be held in trust, and the income to be applied to the support of poor inmates therein. One tenth part to the city of New Haven in trust, the income to be applied by the proper authorities to the purchase of books for the Young Men's Institute, or any public library which may from time to time exist in said city. One tenth part to the State of Connecticut in trust, the income to be applied towards the maintenance of any institution for the cure or relief of idiots, imbeciles and feeble-minded persons. The appropriations specified above are to be made effective, notwithstanding any deficiencies or inaccuracy of description, so that my objects may not be defeated by any technicality or informality. Should any of the trusts not be accepted, the amount intended therefor shall be proportionately distributed in augmentation of such as may be accepted."

Does the language of the testator, taken alone or in connection with all the provisions respecting the remainder, indicate a purpose and intention on his part that the failure

of the city of New Haven to accept the trusteeship should defeat the trust? Was he probably more interested in the question who should administer it than whether it should be made effective? The intent to have the specified appropriations made effective is distinctly expressed. Except for the clause we are considering, the refusal to accept the trust would not affect it. The trust would not be allowed to fail for want of a trustee to administer it.

In *Storrs Agricultural School* v. *Whitney*, 54 Conn., 342, land was conveyed to a charitable corporation for a charitable purpose, with a proviso that if it should abandon such use it should pay the market value of the property as it received it, to the selectmen of Mansfield, to constitute a fund, of which the selectmen and their successors in office should be trustees, the interest of which should be applied by them to the aid of indigent young men fitting themselves for the ministry. This court said (p. 345:) "If the persons who should at any time hold office as selectmen of that town should decline the trust, such declination would not affect it; the trust remains, and the court would supply trustees upon proper application in behalf of any member of the specified class of beneficiaries. A charitable use will not be permitted to fall because the named trustee declines nor because of delay upon the part of the beneficiaries in asking for their rights." It is a rule which admits of no exception, that equity never wants a trustee, or, in other words, that if a trust is once properly created, the incompetency, disability, death or non-appointment of a trustee shall not defeat it. 1 Perry on Trusts, § 38; *Donalds* v. *Plumb*, 8 Conn., 453. Flint, in his work on Trusts and Trustees, § 274, says courts will execute a charitable trust if possible; even if vague or apparently tinged with illegality, if any other construction can be put upon it; and cites many cases in support of the proposition.

Upon the question of intent it may be fairly argued that it would be more natural for the charitable man, which the will shows the testator to have been, to be chiefly solicitous that the beneficiaries should receive the assistance, and not

who should administer it. The fact that he provides, in the very next clause after those above quoted, for the case of vacancy at any time in the trusteeship by death, resignation or otherwise, tends to show that he had no such partiality for the trustees named by him as to make the continuance of the trust depend upon its being administered by them in those cases where the trustees and the beneficiaries were really distinct and separate. The testator evidently had in mind two classes of beneficiaries, one where the real purpose was to benefit the trustee, and one where the trustee had no independent duty towards the beneficiaries, and was considered only as a medium through which the benefit would be applied to them. That is to say, some of the trusts were in effect, and evidently so intended, gifts to the trustee. The question whether it would be of advantage to the trustee to accept or not was the only real question, and a refusal might properly end the matter.

Certainly the bequest to the President and Fellows of Yale College, for the support of scholarships or such other purposes in the academical department as they may deem expedient, is of that nature. The direct benefit is to the college. By its very terms the trust is incapable of being administered by another. A refusal by the trustee named to accept would end the matter, and make a case for the sensible application of the provision in the will regarding non-accepted trusts. But, as already suggested, in the clause under discussion the intent was to help only the beneficiaries. As the city had no corporate duty in respect to them it could have been inserted only for their benefit, and it is almost certain that the testator did not intend to provide that in this case the charity should fail unless administered by the city.

It is stated, moreover, in one of the briefs, that this testator drew his own will. Now, it would not be at all unnatural nor an unusual use of words for a layman to refer to the action of the beneficiaries of a trust by the language "should any of the trusts not be accepted." In this case he does not necessarily mean " should any of the trustees

decline to act." Taking into account the fact that, in one instance at least, as already shown, the trustee was also the beneficiary, it seems more natural to suppose that the testator, when he penned the words just- quoted, had in mind only those cases where the party really intended to be benefited declined to be benefited.

On the whole then, influenced as we must be by the salutary rule regarding bequests to public charities, that, of two possible constructions, that which sustains the charity should be adopted, if not inconsistent with the intent of the testator, and, being satisfied that the intent of Mr. Marett was not to hinge his bequest to the "deserving indigent persons" on the action of the city in accepting or declining the trust, we hold that neither the refusal nor inability of the trustee to accept the trust defeats the same, but that the same is a good and valid trust notwithstanding.

The question now occurs, whether the Superior Court, as a court of equity, will take the fund into its own care and appoint a trustee to administer it under the will.

There can be no question of the power of the court so to do. In 1822 a statute was passed providing that when a testator had not provided for the contingency of the death, incapacity or refusal of a trustee appointed by him to accept and execute the trust, the court of probate having the probate of his will should have power to appoint a trustee. This statute was not understood to deprive a court of equity of its jurisdiction over the appointment of trustees. Judge SWIFT, in the second volume of his Digest, published in 1823, page 119, treating of the appointment and removal of trustees, says:—"The devisor or donor, in the instrument creating the trust, should appoint the trustees, and prescribe the mode of appointing others where they refuse to accept, die, or become incompetent to act; but in case of neglect to do it a court of equity may, supply the deficiency by the appointment of proper trustees to execute the trust; and by statute courts of probate have that power."

Other statutes have since been passed regulating the proceedings of courts of probate with trustees, but this court

has meantime repeatedly affirmed the power of the Superior Court, as a court of equity, to supply trustees when necessary in order to preserve a trust. The statute now in force, (Gen. Statutes, § 491,) authorizes courts of probate, in certain cases, to appoint trustees. Under it the proper court of probate would be authorized to appoint a trustee to administer the fund in question. It does not however strip the Superior Court of jurisdiction. The two courts may be regarded as having concurrent jurisdiction. In the present state of the law there is a manifest propriety and convenience in leaving the matter to courts of probate, and it is the duty of those courts to act. While then the Superior Court retains its jurisdiction, it will exercise it only in cases where, except for its action, a legal trust would be defeated for want of a trustee to administer it.

As to the appearance of the attorney for the state as a party plaintiff, we see no valid objection. In *Proprietors of White School House* v. *Post*, 31 Conn., 240, while it was not necessary to decide the question of the duty of the state's attorney, as guardian of the rights of the public, in respect to public charitable trusts, yet the court clearly intimates that ordinarily it would be his duty, or at least his right, to bring suits to enforce them, in analogy to the practice in England, where the attorney general acts in such cases. We have been referred to no case to the contrary. The New York Courts seem to take a like view of the matter and it is approved in Perry on Trusts.

We think also that in this case the attorney for the state should apply to the probate court for the appointment of a trustee or trustees. In case of his failure so to do, such application may be made by any individual of the specified class of beneficiaries.

We have now considered all the points that are necessary to the decision of this case. Perhaps we have covered more ground than was absolutely necessary for that purpose; but, in consideration of the fact that here was a great public charity in which a large number of indigent persons are interested, we have felt constrained to make our decision

comprehensive enough to embrace whatever was fairly before us. The points decided all arise upon the pleadings and finding of facts, irrespective of the questions proposed by the corporation's counsel under the instructions of the common council, which, it is objected, are not properly before us. We have no occasion to discuss that objection, inasmuch as our conclusions seem to cover substantially the points raised by them, and either to furnish material for their answer or render answers unnecessary.

The Superior Court is advised to dismiss the temporary injunction, and if, within a reasonable time, it shall appear that the court of probate having jurisdiction of the matter has duly appointed a trustee, and that such trustee has accepted and given bonds according to law, then to dismiss the complaint. If within a reasonable time the court of probate does not appoint a trustee as aforesaid who shall duly qualify, then the Superior Court, as a court of equity, is advised to make such appointment, and take a good and sufficient bond conditioned upon the discharge of the duties of said trust according to law.

In this opinion the other judges concurred.