Matthias, J.
The plaintiff, bringing this action as a taxpayer of the city of Columbus, under favor of Section 4311 et seq., General Code, seeks to enjoin the further performance of certain alleged acts and practices of the city officials named as defendants, which acts and practices he claims constitute an abuse of corporate power and a misapplication of the funds of the municipality. This claimed abuse of power and misapplication of public funds grows out of the maintenance and operation of the municipal electric-light plant. The alleged wrongdoing upon the part of the officers of the city may, we think, with entire fairness, be concisely stated as follows :
First. Furnishing electric current to private consumers which is needed to light the streets and public ways of the city, and at such times as to result in overloading the machinery and equipment of the plant.
Second. Furnishing electric current to private consumers at less than cost.
*478 Third. Discrimination in furnishing current to private consumers and in the rates and terms for such service.
It is asserted by the plaintiff that because of the fact that current is furnished to private consumers many streets, alleys and public places of'the city, which should be lighted for public safety and enjoyment, are not lighted, because the capacity of the plant is insufficient to furnish electric current to private consumers' and also to adequately light the streets and public places of the city, and that by reason of furnishing current to private consumers the machinery and equipment of the city’s plant is at certain hours greatly overloaded and burdened beyond the factor of safety, thus imperiling the whole lighting system of the city.
In this complaint the plaintiff assumes that the absolute duty rests upon the city officials having the care and management of its lighting plant to provide facilities for lighting from its plant all the streets and public places of the city before any current whatever may be furnished to private consumers. Such assumption wholly disregards the plain provisions of the statute containing the grant of power under which the city acts. The authority is specifically conferred upon municipalities to erect and operate electric light plants by Sections 3618 and 3939, General Code.
It may be well to suggest at this point that the issues in this case were made prior to the adoption of a charter by the city of Columbus, and we are necessarily dealing with the conditions as they then ' existed.
*479 The former section (3618) grants power “To establish, maintain and operate municipal lighting, power and heating plants, and to furnish the municipality and the inhabitants thereof with light, power and heat, to procure everything necessary therefor, and to acquire by purchase, lease or otherwise, the necessary lands for such purpose, within and without the municipality.”
The latter section (3939) authorizes the issuance and sale of bonds for certain specified purposes, one of which is “For erecting or purchasing gas works or works for the generation and transmission of electricity, for the supplying of gas or electricity to the corporation and the inhabitants thereof.”
The authority thus conferred is not limited, nor restricted, but is broad and comprehensive. No language is used which suggests, much less requires, that all streets and public ways of a municipality shall be lighted by current from the city’s plant before current may be furnished to the inhabitants of the city for private consumption. Neither use is given preference over the other, and hence no more can it be said that the plant is overburdened by private use than by street lighting, nor can it be required that the former shall be entirely discontinued so that the latter may be enlarged and extended. As stated in 4 McQuillin on Municipal Corporations, Section 1799: “It cannot be successfully contended that so long as portions of the city remain unlighted there cannot be an excess of electricity which can be disposed of by the city to private citizens, where the city operates its *480 own electric light plant, where no fraud is alleged on the part of the municipality.”
Under the provisions of Section 3809, General Code, the city may make a contract with a private company for lighting the streets and public places of the municipality.
A consideration of the provisions of the several sections of the statute above cited would seem to warrant the conclusion that a city may provide by private contract for lighting the streets and public places in one portion of the city and furnish the current from its own electric light plant for the public and private lighting in other portions of the city. It can readily be seen that conditions might be such as to make that plan expedient and economical.
The manner in which the authority conferred by statute is to be exercised is left to the discretion of the officials of the municipality. The general principle is well established that in. the absence of fraud or gross abuse of discretion the courts will not interfere with the discharge of such duties. It must at least appear that the public officers are transcending their powers or withholding some clear right, or perpetrating or threatening to commit a wrong, before the power of the courts may be invoked. Surely the court cannot be called upon to determine the extent to which current should be used for street lighting and what portion of the current generated may properly be furnished private consumers, nor to ascertain and fix by judicial decree the precise burden that may be placed upon the plant. A mere departure from the exercise of sound judg *481 ment does not warrant the interposition of the court and the control and guidance of its mandate.
The rule to be applied in actions such as this has been stated frequently, but probably nowhere better than in the opinion of the court in the case of Dailey v. New Haven, 60 Conn., 314, 319, where it is said: “With the exercise of discretionary powers courts, rarely and only for grave reasons, interfere. These grave reasons are found only where fraud, corruption, improper motives or influences, plain disregard of duty, gross abuse of power or violation of law, enter into and characterize the result. Difference in opinion or judgment is never a sufficient ground for interference.”
No doubt all will agree that poorly-lighted streets are a serious inconvenience to the people and materially increase the dangers of travel, and that a saving of expense by inadequately lighting the streets of a municipality is a mistaken and shortsighted economical policy. The court may not approve the policy pursued or the method or manner of operation of the city’s utility, but so long as the officials to whom the law has delegated administrative duties involving the exercise of discretion are acting within the powers conferred, and it does not appear that their conduct is fraudulent or in bad faith, their acts are not subject to judicial supervision and control.
We regard the principle to be well settled that the private and proprietary powers conferred upon a municipal corporation are to be construed with liberality to the end that the purpose of the grant may be fully accomplished. As we have' seen, the *482 powers so conferred are broad and comprehensive, no terms being used which in the least degree circumscribe or restrict the actions of the city officials in the management and operation of its utilities. Much is left to their judgment and discretion, as indeed seems necessary; for successful and satisfactory management and operation of 3- city’s utilities could not be accomplished if they were hedged about and hampered by detailed, minute and precise regulations, directions or restrictions, either legislative or judicial. The principle to be here applied is well stated by Pond in his work on Public Utilities, Section 11, as follows:
“In its private commercial capacity while acting primarily as a business concern, the powers conferred on a municipal corporation are for its own special benefit and advantage. * * * Recognizing this to be the principal object in the creation of such corporations and the sole purpose of endowing them with such commercial and proprietary powers as permit them and their’ citizens to enjoy the benefits of municipal public utilities, the courts permit and favor the exercise of the fullest discretion in the enjoyment and administration of such powers which are consistent with the general object of their grant and the best interests of all parties concerned who are intended to be benefited by such advantages.
“The discretion of municipal corporations in the exercise of their powers is as wide as that enjoyed by the general government and is to be exercised in accordance with the judgment of the authorities in charge of the municipal corporation as to the neces *483 sity or expediency of each particular subject when it arises.”
The allegations of the petition and amendment thereto with reference to the inadequacy of the prices charged for current sold for private consumption are in very broad and general terms, the substance of the complaint in that respect being that the prices charged are too low to meet the proportionate cost of generation and transmission of current furnished private consumers, thereby entailing a loss which the taxpayers of the city are required to meet.
We think it must be conceded that the city, acting in a proprietary capacity, may exercise its powers as would an individual or private corporation. It may be that for a time the business will not be remunerative at the rates charged, yet with proper management the business may develop to a point where it will even yield a profit to the city and therefore result to “its own special benefit and advantage.”
It does not appear that the present rates are lower than are charged by a competitor, nor is it disclosed that a higher rate could be procured, nor are there any averments in the petition from which it may be inferred that in the selling of electric current at prices inadequate to meet the cost of production the officials of the city have been actuated by fraudulent or improper motives.
It is quite apparent from the pleadings that the city’s plant is used primarily for the purpose of lighting the streets and public ways of the city, the furnishing of light to private consumers being only *484 incidental, and that at least a portion of such private service is during the day. The position of the city officials seems to be that a low price is justified in order to develop a day load and thus balance the machinery of the plant.
A more serious question is presented by the allegations of the petition and amendment thereto with reference to discrimination by those in charge of the plant in furnishing current to private consumers; and, particularly, as to the failure to have or use any system or schedule of rates for such service, and arbitrarily fixing the rate in each case. The charge made by the plaintiff in this regard is in substance that the city has never used any system or schedule of rates of any kind whatsoever either for light or power for private purposes, and that prices and rates for said current have been at no time uniform, or substantially so, under like conditions, situations and circumstances, but have been widely different and varying.
The statute conferring power upon municipalities to establish, maintain and operate municipal lighting plans, under which the city of Columbus was acting at the time this suit was instituted, and theretofore, contains no provision whatever with reference to rates or charges for current furnished to private consumers, nor does it designate any officer or body whose duty it shall be to prescribe rates for such service, but under the provisions of Section 3616, General Code, the council of the municipality is authorized to provide by ordinance or resolution for the exercise of the powers enumerated in the chapter of which that section is a part, *485 one of which powers is the operation of an electric light plant. The authority to adopt rates for current which the municipality was empowered to furnish “the inhabitants thereof” was clearly implied, and that duty devolved upon the municipal council. It follows that the fixing of rates for current from the city’s plant by other officials or agents or employes of-the city was unwarranted.
It is averred by the plaintiff that these officers having assumed such power and' authority in the absence of a system or schedule of rates duly and properly adopted by council are using that power to discriminate between citizens with reference to furnishing the product of the city’s plant, and particularly as to rates charged therefor. That such discrimination constitutes an abuse of power there can be no question. That neither public nor private corporations may discriminate between, members of the public with reference to rates and terms of service does not longer admit of controversy. This wholesome rule, long in force, has had. frequent application, particularly to common carriers and utility companies. A municipality operating a utility is not exempt therefrom. Acting in a proprietary capacity, we have seen, it should have the freedom of action of a private utility corporation, but it is also subject to the same restrictions as to practices of discrimination in rates and service.
But it is urged that the plaintiff is not a proper party to make such complaint, and that it not appearing that he suffers any injury by reason of the wrongful practices charged, he cannot maintain the *486 action. We think that contention is unsound. The solicitor could maintain the action under authority of the provisions of Section 4311, General Code. In such a proceeding he represents the public. If upon the request of a taxpayer the city solicitor refuses to institute the action, the taxpayer may do so by virtue of the provisions of Section 4314, General Code. He then represents the public just as would the solicitor had he exercised the power conferred upon him and brought the suit. These sections are remedial in their character and are therefore to be liberally construed and effectively applied in order to safeguard the rights of the municipality, the obvious purpose of their enactment.
For the reasons stated we are of opinion that the petition and amendment thereto state a cause of action in the respect indicated, and therefore that the court of common pleas committed error in sustaining the demurrer and the court of appeals erred in affirming that judgment.

Judgment reversed.

Nichols, C. J., Wanamaker, Newman, Jones, Johnson and Donahue, JJ., concur.