ELLIOT M. BEARDSLEY, EXECUTOR, *vs.* THE SELECTMEN
OF BRIDGEPORT AND OTHERS.

A testator gave his wife the use for life or widowhood of his entire estate.
By a codicil he gave $1,000 each to two charitable societies. Held that
the latter bequests were not subject to the life estate of the wife, but
were to be paid at the usual time.

The testator directed that after his wife's marriage or death his whole
estate should "be used at discretion by the acting selectmen of *B* for
the special benefit of the worthy, deserving, poor, white, American,
Protestant, Democratic widows and orphans, residing in *B*, until all
is expended." Held not to be void for uncertainty.

The question in such a case is, not whether there are not many persons
concerning whom there must be doubts as to their meeting the require-
ments of the bequest, but whether there are not many concerning
whom there can be no doubt as to their meeting them all.

The persons holding the office of selectmen of *B* were joint trustees, in
perpetual succession, clothed with power and placed under obligation
to select beneficiaries from the classes specified and apply either the
income or the principal of the fund, at their discretion, for their relief.

[Argued November 4th—decided November 24th, 1885.]

SUIT by an executor, for advice as to the construction
and validity of certain bequests in a will and codicil;
brought to the Superior Court.

The will in question was that of Aaron Summers, of
Bridgeport, Conn., who died in April, 1884. It was dated
March 16th, 1881, and was as follows:

"I, Aaron Summers, of Bridgeport, do will and bequeath
the use of my whole estate, both personal and real, after my
just debts and funeral charges are paid, to my wife, Anna
Maria, while she remains my widow. After her second
marriage, if it should ever occur, or her decease, I will the
whole of my estate, both personal and real, to be disposed
of within a reasonable time after my decease and hers
(meaning my wife) by my executor, and deposited in some
safe banking institution or institutions in the town of
Bridgeport, or within the state of Connecticut, to be used
discretionary by the acting selectmen of said Bridgeport,
for the special benefit of the worthy, deserving, poor, white,

American, Protestant, Democratic widows and orphans residing in the town of Bridgeport, until all is expended. I also will that not one of my connections shall have a dollar; also not one of my wife's connections shall have a dollar, but strictly among those entirely disconnected, as mentioned in this will. No partiality to friends."

On the 18th of October, 1882, the testator executed the following codicil to his will:

"I, Aaron Summers, being still of sound and disposing mind and memory, and desiring in some respects to change my last will, dated March 16th, 1881, do hereby make, publish and declare the following as a codicil to said last will, in manner and form following, to wit:

"*First*, I give and bequeath unto the Bridgeport Protestant Orphan Asylum of Bridgeport, Conn., the sum of one thousand dollars, to be used for the general purposes of said asylum.

"*Second*, I give and bequeath unto The Bridgeport Hospital the sum of one thousand dollars, to be used for the general purposes of said hospital.

"I hereby revoke and annul any and all parts of my said will which are inconsistent with this codicil, but the remainder of said will I hereby distinctly re-affirm and publish."

The case was reserved for the advice of this court.

*R. C. Amber*, for the executor.

*J. A. Joyce*, for the selectmen of Bridgeport.

*J. J. Rose*, for the Bridgeport Hospital.

*H. S. Sanford*, for the Bridgeport Orphan Asylum.

*J. C. Chamberlain*, for the widow.

*L. Warner*, for the heirs at law.

PARDEE, J.—By his will as originally made Aaron Sum-

mers gave to his wife the use of his entire estate during life or widowhood; by the codicil he gave $1,000 to the Bridgeport Protestant Orphan Asylum and $1,000 to the Bridgeport Hospital. The claim of the widow is, that she is to have the use for life of the entire estate and that neither of these legacies is payable until after her death. But the office of this codicil is to change what had been written before; it is the latest and controlling expression of the testator's wish. The bequests thereby made are absolute in terms; as perfectly so as is the devise of the life use to the wife in the will. The expressions are all free from ambiguity; all express a legal intent in legal language; and in them the rules of law require us to find the precise extent of the change intended by the testator. These legacies are therefore payable at the usual time.

Subject to the use for life by his wife and to diminution by certain legacies, the testator disposes of his estate as follows: "To be used discretionary by the acting selectmen of said Bridgeport for the special benefit of the worthy, deserving, poor, white, American, Protestant, Democratic widows and orphans residing in the town of Bridgeport, Connecticut, until all is expended."

It is the claim of the heirs at law that this bequest is void for uncertainty as to the persons composing the class to be benefited, and they have pressed upon our attention the doubts and difficulties which will beset the trustees whenever they shall attempt to select the beneficiaries. But notwithstanding the accumulation of adjectives the bequest is within our statute of charitable uses as interpreted by this court; for it is to be borne in mind that the question before us is not—are there not many persons concerning whom there must be doubts whether they can meet some of the requirements of the testator? but it is, are there not many concerning whom no doubt can exist that they are able to meet them all? Each one of the adjectives is of common use and has as definite and precise a meaning as have most words in the language. Of course there are all grades of character and of pecuniary condition, and all shades of

color; of course men may profess the Protestant faith and worship after its forms; may advocate the principles of the Democratic party and vote 'for its candidates, and yet at heart accept neither. But, notwithstanding all this, men are constantly deciding and acting, in matters which concern both property and person, upon the belief that they will not be misunderstood when they use adjectives like these under consideration. The business of the world will not, cannot, wait until every word shall become mathematically precise.

The office of selectmen is continuous by law. The persons from time to time constituting the board of selectmen of the town of Bridgeport are joint trustees in perpetual succession, clothed with power and placed under obligation to select beneficiaries from the classes specified by the testator and apply either the interest or the principal of the fund to the relief of their necessities at discretion.

The beneficiaries must be "poor." This word as used by the testator includes those who have exhausted all means of support and are in a condition to require public aid for the supply of their necessities; certainly it includes those who as paupers are receiving such aid, and therefore, beyond all question within the statute.

They must be "worthy and deserving." In *White* v. *Fisk*, 22 Conn., 31, the descriptive adjective was "pious;" in *Treat's Appeal from Probate*, 30 Conn., 113, this court said of the will under consideration in *White* v. *Fisk*, that the testator "had provided in his will no way of selecting the beneficiaries from a class, and the court held that they could not, even as a court of equity, do it for him. Had that power been given to his executors or trustees the clause in the will would have been sustained." To determine that one is "worthy and deserving," is no more difficult than to determine that he is "pious."

They must be "white." In *Treat's Appeal from Probate* just referred to, they were "Indians and Africans," and the bequest was sustained. It is as difficult to declare of a person that he has color as that he has none. For many

years by the constitution of this state only white men were permitted to vote; if the word has in the general mind a meaning so sharply defined that it can be put to a use so practical and so important, we think it may well support a charitable bequest.

They must be "American." In the general mind this adjective now describes the descendants of Europeans born in America, and is applied especially to the inhabitants of the United States; persons quite as easily distinguished as Indians and Africans.

They must be "Protestant." This adjective was defined and declared capable of sustaining a charitable bequest by this court in *Tappan's Appeal from Probate*, 52 Conn., 412.

They must be "Democratic." It is a matter of common knowledge that there is a political party known as the Democratic party, to which a large portion of the voters in every one of the United States adhere; which they support by speech and act—by advocating its principles and voting for its candidates for office; and that the determination of the question as to what persons and principles shall be in the ascendant in government for the time being depends upon the belief of the voter that the speech and the act of the candidate are true indexes of his opinion. The trustees are to inquire and decide concerning a given man whether they believe that he adhered to and supported the principles of the Democratic party; and they may well rest upon reasons which are sufficient to control the general mind of voters in a matter of the highest importance.

They may be "orphans." This word describes a child who has lost one or both of its parents. He may be extremely young and so of course without character, religious belief, or political principles, and as by law neither women nor children vote, so in the common speech neither are said to have democratic or other political principles. Therefore it must be determined to have been the intent of the testator, as to an orphan not of sufficient age to have acquired a character, that he should have been born of white, American and Protestant parents, of a Democratic father, and be des-

titute; and as to a widow, that she should be worthy, deserving, poor, white, American, Protestant, and have had a Democratic husband.

The Superior Court is advised that the bequest for "the special benefit of the worthy, deserving, poor, white, American, Protestant, Democratic widows and orphans residing in the town of Bridgeport, Connecticut," is valid; and that the legacies by the codicil to the Bridgeport Protestant Orphan Asylum and to the Bridgeport Hospital are payable at the expiration of one year from the death of the testator.

In this opinion the other judges concurred.