LAKATONG LODGE, No. 114, OF QUAKERTOWN, etc.,

*v.*

THE BOARD OF EDUCATION OF FRANKLIN TOWNSHIP, HUN-
TERDON COUNTY.

[Argued September 22d, 1914. Decided January 11th, 1915.]

1. Whether trustees take an estate in fee depends upon the require-
ments of the trust and not upon the insertion of words of inheritance in
the deed.

2. A deed to trustees of a charitable trust creates a legal estate in fee,
although the deed to them of the trust estate contains no words of
inheritance.

3. In the absence of any scheme judicially approved, the trustees of a
charity may not make a *cy press* application of the estate upon their
own authority, even though it be desirable.

4. Upon application for the appointment of new trustees of a charitable
trust, the attorney-general is a necessary party.

On final hearing.

*Mr. Paul A. Queen, Mr. H. Burdett Herr* and *Mr. Charles A. Woodruff,* for the complainant.

*Mr. Willard C. Parker* and *Mr. George H. Large,* for the de-
fendant.

BACKES, V. C.

For the purpose of securing to the children of the vicinity facilities for a higher grade of education than the district school afforded, citizens of Franklin township, in Hunterdon county, contributed a fund which was used in the purchase of a lot of land, and the erection thereon of a two-story school house. Title to the lot was taken in 1850 from one Clifton, in the name of five men, as "Trustees of the Franklin Education Association," with grant and *habendum* to them and "to their successors in office." The deed contains all of the covenants of a general warranty, which run to the trustees "and their successors in office." It is on a printed form and the words "heirs and assigns," wherever they relate to the trustees, are stricken out. The trustees conducted an academy in the first floor of the building until 1866, when, because of financial failure, the undertaking was abandoned, and the property was turned over to the public school authorities of the district, who have ever since carried on the system of public education in the first floor of the building. Recently, the building was condemned as unfit for school purposes, and in order to erect a new one on the site, the defendant was about to tear it down, when it was stopped by a temporary restraining order. The complainant has occupied the second story of the building as a lodge room since 1856, under a lease made to it by the trustees, for a term of five years, at an annual rental of $25; paid the rent until the year 1872, when, the bill alleges, it purchased from the trustees the title to the school house lot.

After the defendant answered, denying complainant's title by purchase from the trustees, and in which it set up that the Franklin Education Association was a charitable trust, and that upon becoming defunct, the further performance of the trust was turned over to the public school authorities by the trustees, with the intent and effect of vesting in them the full title to, and control over, the school property, by way of dedication; the complainant procured from the heirs-at-law of Clifton, the grantor of the trustees, a deed for the school house lot, and laid claim thereto, thereunder, in a supplemental bill. This, obviously, was

obtained upon the notion that because the deed to the trustees contained no words of inheritance, a life estate only passed to them, and was at an end by reason of their death. This, evidently, was also the idea of the defendant, because it filed a cross-bill, praying that the deed be reformed by restoring the words of limitation, so as to carry the fee.

On the coming in of the defendant's answer, the temporary restraining order was continued, upon condition that the complainant try the issue of its alleged legal title, set up in the original bill, at the then next term of the Hunterdon circuit. Thereafter (the complainant having then procured the deed from the heirs-at-law) the defendant, fearing that title under the deed could be maintained, applied for a stay of the action, which was then pending in the circuit, and for leave to file a cross-bill. Both sides have signified their willingness that the questions in dispute be decided in this court. *Freichnecht* v. *Meyer, 39 N. J. Eq. 551.*

If it were deemed necessary to reform the deed to the trustees, on the ground of mistake, ample proof of an intention to convey a fee may be discovered in the record. Before the deed to the trustees was made, their grantor agreed, in writing, to sell to them the land for $100, to be paid on the 1st day of May then following, and also agreed to pay one-half of the expense of surveying the land, and in the meantime to

"give sufficient possession of the same, to give the said trustees room to deliver stone and materials on the ground, to commence or build an academy, for which purpose they purchased said land."

A penalty for non-performance, in the sum of $500, was stipulated. The price agreed upon was evidently the full value of the land, and from this it is a fair assumption that the entire estate was to be sold. Also, the structure to be built, and the purpose of its building, evince a futurity far beyond the lifetime of the trustees. The covenants in the deed that the grantor has good right to sell the said lands to the party of the second part and their successors, in office "forever;" that they shall at all times "forever" peaceably enjoy the premises, and that the grantor and

his heirs will "forever" warrant and defend the title of the trustees as against himself and his heirs and every other person, speak plainly the true scope of the instrument. Collectively, these facts are convincing that the absolute estate was to be conveyed, and that the words "successors in office" were substituted under a misapprehension of their legal effect. To my mind, the very use of the substituted words manifest an intent to grant more than an estate for the life of the trustees. Authority for reformation may be found in *Weller* v. *Rolason, 17 N. J. Eq. 1; Wanner* v. *Sisson, 29 N. J. Eq. 141; Gale* v. *Morris, 29 N. J. Eq. 222.* But I am of the opinion that a reformation is not essential to effect an estate in fee in the trustees. Whether trustees take an estate in fee depends upon the requirements of the trust and not upon the insertion of words of inheritance. *Potter* v. *Couch, 141 U. S. 296.* The academy, conducted by the trustees, was open to all who cared to avail themselves of its benefits, upon the payment of tuition fees. It was a public educational institution; one not run for profit, and the trust assumed and performed by the trustees was a charitable trust in the legal sense. *Stevens* v. *Shippen, 28 N. J. Eq. 487; Taylor* v. *Bryn Mawr College, 34 N. J. Eq. 101; Alfred University* v. *Hancock, 69 N. J. Eq. 470; Hilliard* v. *Parker, 76 N. J. Eq. 447; 6 Cyc. 910; 5 R. C. L. 330.* And the trustees, under the deed in question, although it contained no words of limitation, took a legal estate in fee in the lands. *Hopkins* v. *Gimshaw, 165 U. S. 342.* Such trusts equity upholds and enforces by appointing trustees and, if necessary, supplying *cestuis que trust. Green* v. *Blackwell, 35 Atl. Rep. 375.* This renders abortive the efforts of the complainant, under the deed from the heirs of Clifton, and disposes of the supplemental bill.

We then must recur to the status of the complainant under the original bill. Its right to relief was there rested exclusively upon ownership under a deed alleged to have been made to it by the trustees in 1872. There is not a particle of proof in the case that such a deed ever existed, and at the hearing the complainant's counsel confessed their inability to produce one. And with this falls the remaining structure upon which the complainant builded for relief.

A possible claim as a tenant holding over under the lease of 1857, is entirely repudiated by the complainant's disclaimer of the landlord's title falsely asserted under the supposed deed, from the trustees, of 1872. *Hankinson* v. *Blair, 15 N. J. Law 181; 24 Cyc. 1353.*

The bill does not count upon adverse possession, nor could this be successfully maintained in the face of the lease under which the complainant went into possession and its subsequent attornment in 1872 to the defendant, at the request of the trustees, in the absence of an adverse holding, hostile to the owner, for the period fixed by law. No claim of ownership was made by the complainant until shortly before this suit was brought.

The complainant's bill will be dismissed, with costs.

Upon the abandonment of the academy, the trustees turned the school building over to the defendant, the public school authorities, for the carrying out of the trust, and in the doing of this, they took the course that a court of equity would have taken had application for directions been made at that time. The defendant, in its answer, avers that this amounted to a dedication, and that the title became vested in the public. I doubt that there was a dedication, whereby the fee passed, for, in the absence of any scheme judicially approved, the trustees of a charity may not make a *cy pres* application of the estate upon their own authority, even though it be desirable. *MacKenzie* v. *Trustees, 67 N. J. Eq. 652.* Upon the defendant amending its cross-bill, to which the attorney-general must be made a party, I will advise a decree appointing the defendant trustee of the charity, to be applied according to the doctrine of *cy pres. Green* v. *Blackwell, supra; Trenton* v. *Howell, 63 Atl. Rep. 1110.* This will put the title at rest.