HELEN H. AVERILL ET ALS. vs. CLARISSA A. LEWIS,
ADMINISTRATRIX, C. T. A. (ESTATES OF MARY L.
FITCH AND ELIZABETH J. FITCH, DECEASED).

Third Judicial District, Bridgeport, April Term, 1927.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Each of two sisters, Mary and Elizabeth, left her entire estate to the
other, if she survived, but if not, then, after the payment of
various legacies, to trustees with directions for the establishment
of "a free rest for white, Protestant, female teachers who may be
dependent upon.their own labor for support, and residing in the
County of Fairfield and State of Connecticut; such rest to be
be known as 'The Bayview Rest,' to be managed and controlled
solely by said trustees, under such reasonable rules and regu-
lations as they may from time to time prescribe." Elizabeth
predeceased Mary and, upon the latter's death, the Court of
Probate accepted the final account of the administratrix c. t. a.
on each estate. From these decrees the plaintiffs, one hundred
and ten in number, appealed to the Superior Court, alleging in
each case that they "are white, Protestant, female teachers, de-
pendent upon their own labor for support, and reside in the
County of Fairfield and State of Connecticut, and as such are
beneficiaries interested in and concerned with the conduct of
the administration of said estate, and the distribution and appli-
cation of the assets thereof to the purposes set forth in the will
of the testatrix," and that they "are aggrieved by said order
and decree of this court." Held (two judges dissenting):

1. That the trust provisions in the will of Elizabeth never having be-
come operative, the appellants did not have such a direct
pecuniary interest in her estate, even assuming that they were.
beneficiaries of the trust under the will of Mary, as would afford
them the right of appeal, under §5071 of the General Statutes,
from the doings of the Court of Probate in connection with
Elizabeth's estate.

2. That the appeals were defective and properly erased from the
docket by the trial court, for the reason that the allegations in
the motions addressed to the Court of Probate concerning the
plaintiffs' interest were mere statements of legal conclusions
and did not meet the requirement of §5075 of the General
Statutes, that such interest shall be particularly stated unless it
appears on the face of the record.

3. That the omission of the plaintiffs to aver in their motions that

they were acting as representatives of any party in interest, was not supplied by the subsequent reference to them in the reasons of appeal as "representatives of the residuary beneficiaries."

4. That the trust created by the will of Mary bore the distinguishing mark of a public, charitable trust, in that the class of persons from which its beneficiaries were to be chosen was described in general terms and its membership was uncertain and fluctuating; and that it was impossible either to determine who all the recipients of the charity might be or to demonstrate that any of the present plaintiffs might become such.

5. That the interests of this unascertainable group could be represented only by the trustees, or by the Attorney General acting under §170 of the General Statutes; and that, therefore, the plaintiffs had no right to maintain their appeal from the acceptance of the administration account upon the estate of Mary.

Argued April 20th—decided October 3d, 1927.

APPEALS by the plaintiffs brought to and tried together by the Superior Court in Fairfield County; the first being from a decree of the Court of Probate for the district of Bridgeport accepting the defendant's final account in the estate of Mary L. Fitch; the second from a decree of the said court accepting the defendant's final account in the estate of Elizabeth J. Fitch. In each appeal, the defendant filed a pleading entitled "Plea in Abatement and Motion to Erase from the Docket" and in each the Superior Court (*Dickenson, J.*) rendered judgment that the appeal abate and the same be erased from the docket, from which the plaintiffs appealed. *No error.*

*Paul L. Miller,* for the appellants (plaintiffs).

*Sanford Stoddard* and *John T. Curtis,* for the appellee (defendant).

HAINES, J. The appeals from the Court of Probate are somewhat restricted in their recitals. The parties in argument and brief agree, however, upon certain facts which make them more readily understood, and

which are as follows: The testatrices, Elizabeth J.
Fitch and Mary L. Fitch, were sisters. Each left a
will devising and bequeathing all the residue of her
estate after the payment of debts and other proper
charges, to her sister. "All the rest, residue and re-
mainder of my estate, of whatever kind or nature and
wheresoever situated, to my . . . sister . . . to have
and to hold the same unto her and her heirs forever."
(Article Second.) "If my said sister shall not survive
me, then in such case and event, I dispose of my estate
as hereinafter . . . provided." (Article Third.) Then
follow provisions for gifts of money and various articles
to numerous beneficiaries. Finally, in the Twelfth
Article, provision was made for the disposition of the
residue, "subject to the contingency . . . that my sis-
ter should not be living at the time of my decease."
This disposition, set out at length, designates certain
persons as trustees, and provides a trust for the estab-
lishment and maintenance of "a free Rest for white,
Protestant, female teachers, who may be dependent
upon their own labor for support, and residing in the
County of Fairfield and State of Connecticut; such
Rest to be known as 'The Bayview Rest,' to be man-
aged and controlled solely by said trustees, under such
reasonable rules and regulations as they may from
time to time prescribe."

Elizabeth predeceased Mary, with the result, under
the provisions of the will of Elizabeth—that the
residue of her estate became the absolute and sole
property of Mary, and those alternative provisions of
Elizabeth's will making various gifts and creating the
trust fund, never became operative. They are of no
more effect than if they had never been written. To
the date of her own death, therefore, Mary was the
sole and unqualified owner of the residue of the estate
of Elizabeth. Mary having since also deceased, the

trust provision under her will became operative. The Court of Probate accepted the final accounts of the administratrix *c. t. a.* on each estate, and from these decrees the present appellants, one hundred and ten in number, took their two appeals. These are identical in character, were heard together in the Superior Court, and are here presented and discussed.

The appeals addressed to the Court of Probate for the district of Bridgeport, aver that these one hundred and ten appellants "are white, Protestant Female Teachers, dependent upon their own labor for support, and reside in the County of Fairfield and State of Connecticut, and as such are beneficiaries interested in and concerned with the conduct of the administration of said estate, and the distribution and application of the assets thereof to the purposes set forth in the will of the testatrix," and that "the subscribers are aggrieved by said order and decree of this court."

To each appeal the appellee filed a pleading entitled "Plea in Abatement and Motion to Erase from the Docket," alleging, "(1) It does not appear that the appellants are persons aggrieved, (2) It does appear that the appellants are not persons aggrieved," and "(3) There was no right of appeal by the appellants from the order of the Probate Court, District of Bridgeport in said County of Fairfield, made on November 18, 1926."

The appellants filed an answer, denying the allegations of the plea and motion. This was not required, since no new facts were alleged. The Superior Court sustained the motion, the only effect of which was to hold that the appellants were not pecuniarily interested in the estates, were not aggrieved, and so had no right of appeal. The present appeal now presents these questions for our consideration.

We first examine the appeal on the estate of Eliza-

beth. It is clear that, being the sole residuary legatee, Mary, during her life, was the only person pecuniarily interested in the accounting of the estate of Elizabeth, and thus the only person who had the right of appeal from the decree of the Court of Probate thereon.. If she were still living, the present appellants could obviously claim no pecuniary interest in the estate and could not appeal from the probate decrees thereon. If they now have such interest with right of appeal, it has arisen as a matter of law by reason of the provisions of the will of Mary, which alone created this trust fund, the trust provisions of Elizabeth's will never having been operative.

Upon the death of Mary, her estate by its proper representative—executor or administrator—had the same pecuniary interest in the estate of Elizabeth and the same right of appeal that Mary had when living. If we assume, for the purposes of the argument, that these appellants are direct beneficiaries under the will of Mary, then they have a pecuniary interest in the estate of Mary, within the meaning of the statute, and can appeal from decrees of the Court of Probate made in relation thereto. *Staniford* v. *Hide,* 1 Root, 263, 264; *Fairweather* v. *Curtiss,* 2 Root, 32, 33; *English* v. *Smith,* 13 Conn. 220; *Saunders* v. *Denison,* 20 Conn. 521; *American Board, etc., Appeal,* 27 Conn. 343; *Dunn's Appeal,* 81 Conn. 127, 132, 70 Atl. 703.

If such beneficiaries of Mary's estate have a right to appeal from probate decrees entered upon an estate in which Mary's estate has an interest, the same reasoning would give a right by reason of interest in any preceding estate from which Mary's estate had ultimately benefited, for it could be argued that the diminution of any such estate during the indefinite past, had ultimately diminished the residue of the present estate which is coming to the appellant. The right of appeal

cannot be so extended. So far as we are aware, the beneficiary's right of appeal has always been limited to the estate in which the beneficiary has a direct pecuniary interest.

In a case in this court decided in 1877, it was urged that an execution creditor taking land bought from an heir of an estate could appeal from a probate decree upon that estate, it being shown that that decree had affected the value of the land in the hands of the taker. While it was not necessary to answer the question in that case, we did indicate doubt whether the taker had such an interest as entitled him to appeal. *Clarkson* v. *Beardsley,* 45 Conn. 196, 198.

We are constrained to hold that the right of appeal under General Statutes, §5071, is limited to those decrees upon the particular estate in which the appellants show a direct pecuniary interest. *Beard's Appeal,* 64 Conn. 526, 533, 30 Atl. 775.

The appellants have no such interest in the estate of Elizabeth. To hold otherwise would be to concede to every succeeding owner of this property for all time, a direct pecuniary interest within the meaning of the statute, and we hold that such was not its purpose or intent. Moreover, the will of Mary L. Fitch spoke only at her death. There was no trust fund until that time. The present appellants cannot therefore claim to be aggrieved by the treatment of a trust fund which was not in existence at the time the grievance complained of occurred. The funds of Elizabeth were legally and finally disposed of before the trust fund was established, and therefore before any rights of the appellants as beneficiaries thereunder came into existence.

We have thus far assumed that these appellants were beneficiaries under the will of Mary, with the same rights of appeal by reason of interest that are

given to heirs and direct beneficiaries, and recognized in the cases which we have cited, but we do not so regard them, for reasons which we shall state when considering the appeal on the estate of Mary L. Fitch.

There is at least one further reason why the appeal on the estate of Elizabeth cannot be maintained. The application addressed to the Court of Probate, after describing the appellants as white, Protestant, female teachers, etc., avers only that they "are beneficiaries interested in and concerned with the conduct of the administration of said estate" of Elizabeth, and that they "are aggrieved by said order and decree."

The statute provides that "the interest of the appellant shall be stated in the motion for appeal, unless such interest appears on the face of the proceedings and records of such Court of Probate." General Statutes, §5075; *Saunders* v. *Denison,* 20 Conn. 521; *Swan* v. *Wheeler,* 4 Day, 137; *Deming's Appeal,* 34 Conn. 201, 203; *Dickerson's Appeal,* 55 Conn. 223, 229, 10 Atl. 194, 15 id. 99; *Campbell's Appeal,* 64 Conn. 277, 292, 29 Atl. 494.

To assert that the appellants are beneficiaries and interested, is to state a legal conclusion only, and whether drawn from the application or from the records of the court, remains a legal conclusion. That is not sufficient to show an interest within the meaning of the statute. An allegation that the appellant is aggrieved "both as an heir at law and next of kin," is a mere averment of a legal conclusion. It being found he was neither next of kin nor heir at law "nor representative of any party in interest," the case was erased from the docket. *Campbell's Appeal,* 64 Conn. 277, 292, 29 Atl. 494.

It will be seen from the application that these one hundred and ten appellants do not apply as "representatives of any party in interest." They aver an

individual interest and the motion to erase is directed to that statement and denies their interest as "persons," though the reasons of appeal, dated ten days after the motion to erase, refer to the appellants as "representatives of the residuary beneficiaries" and "representatives of the ultimate recipients of the residue." All these defects were seasonably taken advantage of by the plea and motion to erase, and the specifications in the reasons of appeal could not avail to supply their omission. *Norton's Appeal,* 46 Conn..527, 528.

The appeal on the estate of Elizabeth J. Fitch cannot be sustained, and the motion to erase was properly granted.

Upon the appeal on the estate of Mary L. Fitch, some of the considerations we have expressed have the same bearing.

The failure to sufficiently allege the interest which the appellants claim or to allege the representative capacity in which they later claim to act are defects of the same character as in the appeal we have been considering; and they require that the action of the Superior Court in granting the plea and motion to erase, should be sustained.

Whether the "class" which the appellants now claim to represent has the necessary "interest" to permit an appeal on the estate of Mary, presents a broader question. Though in our view of the application to the Court of Probate the question becomes somewhat academic, its general importance and the fullness with which it has been discussed by counsel justifies a brief consideration of it.

This trust under the will of Mary L. Fitch is a "public charitable trust," a "gift to charitable uses," and we do not understand counsel on either side to question this. *Tappan's Appeal,* 52 Conn. 412; *Camp* v.

*Crocker's Admr.,* 54 Conn. 21, 5 Atl. 558; *Strong's Appeal,* 68 Conn. 527, 530, 37 Atl. 395. Such trusts were invalid at common law, for the reason that the *cestuis que trustent* were unknown and could only be determined in the future; there was no defined *cestui,* but an unascertained portion of the general public was to enjoy the benefits. *Adye* v. *Smith,* 44 Conn. 60, 67.

"It is an essential feature of a public charity that the beneficiaries are uncertain—a class of persons described in some general language, often fluctuating and changing in their individual members. If all the recipients of a charity could be designated with certainty at the time of its creation, there would be no necessity for a law of charitable uses different from that which governs all other trusts." Zollmann on American Law of Charities (1924) p. 235. Such trusts then are purely creatures of statute. Desiring to foster and encourage charitable uses, as in England and many other States in this country, this State enacted a statute in 1684, which first appeared in the Revision of 1702, sanctioning and sustaining such gifts. This is now General Statutes, §5081.

In the public charitable trust, the *cestuis que trustent* are indefinite and cannot be named. The designation is general and not specific. If the *cestuis que trustent* were specifically named, there would be no need of the statute. The fact that, in the present case, no one can say specifically who the beneficiary or beneficiaries of the fund are or will be, marks the distinction. For an indefinite time, if not for all time, certain members of a class may, under the prescribed conditions and at the discretion of the trustees, enjoy the benefits of this trust. Who or how many of that class now exist and how many are yet unborn, there is no possibility of determining. The beneficiaries of this trust fund will be an uncertain number of the class, now living, and

others yet to be born selected from the general public within certain territorial, occupational, racial and other limits.

To hold that in the present case "all the recipients of this charity" can be "designated with certainty" and can now come into court and claim its benefits, is to deny that it is a public charitable trust under the statute. Not only is it impossible to now determine who are all the recipients of this charity, but it is equally impossible to show that any one of these one hundred and ten appellants ever will become a recipient of it. This trust clearly falls within the description of our last quotation: "The beneficiaries are uncertain—a class of persons described in . . . general language, . . . fluctuating and changing in their individual members."

Since the recipients of this charity are now unascertainable members of the general public, the beneficiary class should be represented and their interests protected by the trustees, or, upon their failure to act, then by the public attorney—formerly the State's Attorney and now the Attorney General. *Healy* v. *Loomis Institute,* 102 Conn. 410, 422, 128 Atl. 774.

"The law has provided a suitable officer to represent those entitled to the beneficial interests in a public charity. It has not left it to individuals to assume this duty, or even to the court to select a person for its performance." *Burbank* v. *Burbank,* 152 Mass. 254, 256, 25 N. E. 427; *Lakatong Lodge* v. *Franklin Board of Education,* 84 N. J. Eq. 112, 92 Atl. 870; *Northwestern University* v. *Wesley Memorial Hospital,* 290 Ill. 205, 125 N. E. 13; *People ex rel. Ellert* v. *Cogswell,* 113 Cal. 129, 45 Pac. 270; 2 Perry on Trusts (6th Ed.) p. 1214; Cleaveland, Hewitt & Clark, Probate Practice, p. 758. "England makes it the duty of

her Attorney General to institute all proceedings necessary to secure the due application and administration of charitable endowments. A similar function has been cast upon the Attorney Generals of many of our States. I believe that this should be the practice in all, and that the French law might well be followed, by requiring the service of process upon the Attorney General in every suit affecting either the validity or the administration of a charitable gift." JUSTICE BALDWIN, in Yale Law Journal, Vol. 4, pp. 134, 135.

The present statute provides that "the Attorney General . . . shall represent the public interest in the protection of any gifts, legacies or devises intended for public or charitable purposes." This is mandatory and specific. General Statutes, §170.

The appellants claim a direct analogy between themselves and those in *Dailey* v. *New Haven,* 60 Conn. 314, 325, 22 Atl. 945, where we said: "The attorney for the State should apply to the Probate Court for the appointment of a trustee or trustees. In case of his failure so to do, such application may be made by any individual of the specified class of beneficiaries." We do not perceive the analogy. That proceeding had nothing whatever to do with the defense or enforcement of any rights of beneficiaries, but only the naming of a trustee to administer the trust. Even so, we held it was the primary duty of the State's Attorney to act, and only upon his neglect or failure, that "any individual of the specified class" might do so. It was purely an administrative matter, adjudicating no rights. Not only so, but the present appeal is not predicated upon the refusal or neglect of the Attorney General to act, but is an independent attempt of certain persons—who cannot even be shown to have a beneficial interest themselves—to assume the per-

formance of a duty which devolves upon the Attorney General by statute.

If it be said that the question of the proper party to bring this appeal, was not made, specifically, one of the grounds of the motion to erase, a sufficient answer is that it is necessarily involved in the conclusion that this is a public charitable trust, and he, and not these individual appellants, must represent the beneficial interests thereunder. It thus enforces one of the grounds of the motion that these appellants are not entitled on the face of the record to appeal.

If any of these one hundred and ten appellants were held to have such an interest as would permit them thus to intervene on their own motion to protect a claimed right under this fund, ignoring the trustees, who are given full control of the fund by the will, and the Attorney General, whose statutory duty it is to act, then any other person who claims to be of the specified class has, and will for all time have, the same right. Public policy alone would forbid our sanction of a course bringing such endless confusion and uncertainty as would thus result. Orderly procedure and the clear purpose of the statute requires that, upon the failure of the trustees to act, such an appeal should be brought by the Attorney General, that he is then a necessary party to the proceeding, and that the interest of these appellants is not shown to be such as entitles them to appeal. The motion to erase was properly granted.

There is no error.

In this opinion MALTBIE and BANKS, Js., concurred.

WHEELER, C. J. (dissenting). I am unable to agree with my brethren in their holding that these appellants have no pecuniary interest in the issue involved

in the appeals, nor in their view that the question of whether the right parties have brought this appeal is raised in the motions to erase, nor in several of the technical grounds which the opinion of the court supports as a basis for denying these appellants the relief they seek.

Each of the testatrices, Elizabeth J. Fitch and Mary L. Fitch, sisters, left a will devising and bequeathing substantially her entire estate to her sister, after paying debts and other proper charges, and all dispositions in case of survival were identical with the exception of Article Eleventh, which bequeathed a like sum, but to different charities. In Article Twelfth, each will devised and bequeathed, subject to the contingency that her sister should not be living at the time of the decease of the testatrix, the residue of her estate in trust to five trustees: A. To hold, invest and reinvest, and after deducting the expenses of the trust, to expend so much of the income as might be necessary and proper in the establishment, support and maintenance, upon the homestead occupied by the testatrices, "of a free Rest, for white, Protestant, female teachers, who may be dependent upon their own labor for support, and residing in the County of Fairfield and State of Connecticut; . . . under such . . . rules and regulations as they may from time to time prescribe." "B. Subject to such reasonable rules and regulations, any white, Protestant, female teacher who may be dependent upon her own labor for support, and who shall reside in said County, shall be entitled to apply to the said trustees for free entertainment and maintenance at such Rest as to the trustees shall seem most worthy and deserving, for such periods of time as said trustees shall think wise, and the income of the said trust fund shall make possible. I desire that such Rest shall be made and maintained attractive and

home like, and that said guests shall be sheltered and entertained in said Rest not lavishly, but hospitably, and without any expense to them for such entertainment and maintenance. I would prefer that a few should be made very comfortable rather than many uncomfortable." The final accounts upon each estate were accepted by the Court of Probate and appeals taken by the one hundred and ten appellants from such decrees. Each appeal recites that the subscribers —appellants—are "white Protestant Female Teachers, dependent upon their own labor for support, and reside in the County of Fairfield and State of Connecticut, and as such are beneficiaries interested in and concerned with the conduct of the administration of said estate, and the distribution and application of the assets thereof to the purposes set forth in the will of the testatrix." It then recites the order of the Court of Probate and the allowance of the final account and the order that it be recorded and lodged on file and that "the subscribers are aggrieved" by the order and decree, wherefore they take their appeal. I agree with my brethren that the so-called pleas in abatement and motions to erase did not allege any new facts and required no answer. I am further of the opinion that these were not pleas in abatement, but simply motions to erase. I also agree with my brethren that the only issue adjudicated by the trial court was in holding that the appellants were not pecuniarily interested in these estates and were not aggrieved, "and so had no right of appeal." It is from this adjudication the appellants appeal.

My brethren hold that the will of Elizabeth J. Fitch never became operative and therefore the appellants have no interest in the final accounting. Elizabeth J. Fitch predeceased her sister Mary and under her will the residue of her estate, which was substantially

her entire estate, less expenses of administration, became the sole property of Mary, so that any diminution of the estate of Elizabeth diminished the estate of Mary, and diminished the amount of the residue available for the charitable trust and for the class of beneficiaries under it, of which class the appellants are members. Whether members of this class are necessary parties or not, they are certainly proper parties if they can be said to have a pecuniary interest. The fund available for the class may be seriously affected by the accounting on this estate and the interest of this class under the public charitable trust ought to be protected. The appellants claim to be aggrieved by the approval of the final account in each estate, the orders upon which were passed on the same day. If the position of the majority opinion be correct as to the order in the estate of Elizabeth J. Fitch, it must be equally sound as to the order in the estate of Mary L. Fitch, and in neither estate would any of the members of this class have an interest or a right to be heard no matter how grievous the wrong done by those in authority in wasting or destroying the trust fund given for the benefit of this class. A result, perhaps destroying a trust fund and leaving the beneficiaries of the trust remediless, ought to be supported by something other than a technical position. Later in the opinion it is urged that the Attorney General alone has the power to protect and enforce the trust and hence to maintain the appeal. I do not discuss this point, since it was not made one of the grounds of the motion to erase, and seems at variance with what the opinion in its earlier part holds to be the only ground adjudicated and appealed from—whether the appellants had any pecuniary interest in this estate and for that reason were aggrieved. The appeals and the motions to erase do not indicate it, but at this stage

of the case it cannot be held as matter of law that the appellants may not subsequently show that through an unjustified refusal of the Attorney General to appeal, or through failure to notify him of the proceedings, he failed to take appeals, and in consequence the rights of the appellants, if they have a pecuniary interest in this fund· and are denied the right of appeal, would be seriously prejudiced by such refusal or failure. If, then, they cannot themselves maintain an appeal from the order so prejudicing them, they will have been deprived of their day in court. The majority opinion also suggests that the administratrix of the estate of Elizabeth J. Fitch was the proper party to appeal. The same considerations which we point out as possible reasons for the failure of the Attorney General to appeal, thus making it indispensable that the appellants be permitted to appeal, might have deterred the administratrix from taking an appeal, and so made it indispensable that the appellants be accorded this right. Punishing the Attorney General, or the administratrix, for a breach of duty, will not bring back the wasted or lost trust fund. The question of who is the proper party to take the appeal bears no relation to the question at issue upon the motions to erase—whether the appellants have a pecuniary interest in this trust fund.

My brethren also maintain that the appeal on the estate of Elizabeth J. Fitch is defective for the reason that it does not appear that the interest of the appellants is stated other than as a legal conclusion, that is, that they are beneficiaries and interested in the estate and aggrieved by the order. The same reason would be equally applicable to the appeal on the estate of Mary L. Fitch. It is true that facts must be stated which show that the appellants are beneficiaries and are aggrieved. In the record, in the argument, and

in the opinion of the court, the wills of these decedents are practically treated as a part of these motions. It appears from the wills that the class described in each will is given the residue of the estate; other allegations show that the appellants are members of this class, and hence may be beneficiaries of this trust fund. The extent of the interest, and how it is affected by the order appealed from, need not appear. *Saunders* v. *Denison,* 20 Conn. 521. Similarly, the allegations that the appellants are beneficiaries and interested is not a legal conclusion, since the wills and the other allegations of the motions show this to be the fact.

My brethren refer to the reasons of appeal which the appellants filed after their motions. I do not understand that these are before us in passing upon the motions to erase the appeals, nor that the motions can be aided by the allegations of the reasons of appeal.

We come next to the main ground of the appeal before us, that the motions do not disclose any pecuniary interest in these appellants, and without such interest the motions are fatally defective and appellants have no basis for their appeals. Under our law the trusts under these wills were valid gifts to a charitable use, for a definite class, and to trustees specifically authorized to select from that class the beneficiaries of the testatrix's bounty at their discretion. *Camp* v. *Crocker's Admr.,* 54 Conn. 21, 24, 5 Atl. 558; *Tappan's Appeal,* 52 Conn. 412; *Eliot's Appeal,* 74 Conn. 586, 598, 51 Atl. 558; *Beardsley* v. *Selectmen of Bridgeport,* 53 Conn. 489, 494, 3 Atl. 557. The allegations of the appeal bring these appellants within this class from which the beneficiaries are to be selected. All those who are members of a class from which the beneficiaries of a charitable trust are selected, have a potential interest in the preservation of

the fund. Each one of the class may at some time be one of its beneficiaries. The appeal is dependent upon the allegation that the appellants are aggrieved by the decree appealed from. "Aggrieved," as used in our statute as to appeals from probate, applies only to those who can show some pecuniary interest which the decree appealed from will in some way injuriously affect. *Woodbury's Appeal,* 70 Conn. 455, 456, 39 Atl. 791; *Beard's Appeal,* 64 Conn. 526, 533, 30 Atl. 775. Aggrieved, as used in this connection, includes those whose interest is a potential pecuniary interest. The members of this class are the only potential beneficiaries of this charitable fund. It exists for them. No one else has even a remote interest in it as long as the class may exist. To hold that the appellants, members of this class, have no pecuniary interest, would deny the interest of every other member of the class, at least until he had been selected by the trustees as a beneficiary. The selected one may be one of a very numerous class. To hold that he has an interest and all others of the class not, is to make the determining test the power of selection rather than the testamentary disposition for the benefit of this class made by the testatrix.

A creditor of an estate represented insolvent has a prima facie interest in its settlement, and this interest gives him a right of appeal from the doings of commissioners, either in rejecting his own claim, or in allowing that of another. *Saunders* v. *Denison,* 20 Conn. 521. The rule obtains for the reason that it cannot be presumed that the executor or administrator would protect the interest of the creditor, although, undoubtedly, the representative of the estate would have a like right of appeal. In *Dailey* v. *New Haven,* 60 Conn. 314, 22 Atl. 945, a will gave one fifth of a large sum given in trust to sundry public charities, to the

city of New Haven to be held in trust and the income applied for the aid of "deserving indigent persons, not paupers." This was thus a public charitable trust, as is the trust before us. The State's Attorney and a taxpayer brought a suit to restrain the city from refusing to accept the bequest. We held the city had no power to accept the trust, but that the gift to a charitable use being valid, the court of equity would appoint a trustee to administer the trust. In our opinion we said: "We think also that in this case the attorney for the State should apply to the probate court for the appointment of a trustee or trustees. In case of his failure so to do, such application may be made by any individual of the specified class of beneficiaries." No one of this class of beneficiaries could act in enforcement of the charitable trust unless he had a pecuniary interest in the trust fund which the court would recognize. In this case the interest of the plaintiff was a potential pecuniary interest, as it is in the instant case. So that our holding meant that we conceived that any of the "deserving indigent persons" for whom the trust had been created had a sufficient pecuniary interest to entitle him to act, provided the attorney for the State should fail to act. Whether the action is taken by the Attorney General, General Statutes, §170, or by the State's Attorney, or by a member of the class of potential beneficiaries, does not create the interest in the trust fund, that was created by the will of the testatrix. The majority opinion holds that the proceeding in the *Dailey* case had nothing to do with the defense or enforcement of the right of a beneficiary, but only with the naming of a trustee, and hence my brethren find no analogy in the action taken by Dailey and in that taken by the testatrix in these cases. Neither had a right to appear unless he had a pecuniary interest. This, in effect, is what

my brethren in other portions of the opinion seem to maintain. We had supposed it to be our law that no private person could appear in the enforcement of a charitable trust who did not have a pecuniary interest, direct or potential.

The motions to erase admit the truth of all allegations of fact made in the motions for an appeal. In their motions these appellants allege that they are within the class designated in the will, and, further, "as such are beneficiaries interested in and concerned with the conduct of the administration of said estate, and the distribution and application of the assets thereof to the purposes set forth in the will of the testatrix." There is nothing in the motions for an appeal, or in the terms of the will, which refute these allegations. Conceding that the appellants are within this class, the terms of the will, fairly construed, in my opinion, give the members of this class a potential pecuniary interest in this fund and in the administration and distribution of its assets.

The one hundred and ten members of this class seriously question the correctness of the final accounting on each estate. They seek to preserve a public trust of a novel and most beneficent character from waste and depletion. They ought to be given an opportunity to be heard, instead of being turned out of court by the drastic application of technical rules. It may be that they can show that the proper public authority was never given notice of the applications for acceptance of the final accounts on these estates, or, if given such notice, that due to his unjustified refusal no appeal was taken by him. If they can show either of these conditions, they ought to have the right to be heard. The decision of the motion to erase, unlike that upon a demurrer, is a final judgment. Unless the want of jurisdiction appears upon the face of the rec-

ord, the motion to erase should not be granted, and in doubtful cases denied. *Norton* v. *Shore Line Electric Ry. Co.,* 84 Conn. 24, 32, 33, 78 Atl. 587.

In this opinion HINMAN, J., concurred.