**TRUSTEES OF the UNIVERSITY OF DELAWARE, Trustee under the Will of Harriott E. Higgins, Petitioner,**

v.

**Richard GEBELEIN, Attorney General of the State of Delaware, Respondent.**

Court of Chancery of Delaware, New Castle County.

Submitted June 5, 1980.

Decided Sept. 17, 1980.

John P. Sinclair and Sue L. Robinson of Potter, Anderson & Corroon, Wilmington, for petitioner.

Don C. Brown, Deputy Atty. Gen. of the State of Delaware, for respondent.

MARVEL, Chancellor:

The counter petition herein seeks the reformation of the Harriott E. Higgins charitable testamentary trust, which presently holds a scholarship fund to be administered by the Trustees of the University of Delaware for the education at such institution of female students, so as to include male students as well, such trust having been created under the provisions of Item IV of the last will and testament of the late Harriott E. Higgins, which provides in pertinent part as follows:

".... AND SUBJECT to the life estate of my said brother, John Higgins, therein, I hereby give, devise and bequeath all of the rest, residue and remainder of my said estate * * * unto the Trustees or Governing Board of the University of Delaware, * * * BUT, NEVERTHELESS, in Trust for the following purposes, namely, that the principal thereof shall be safely invested by them, from time to time, in good and safe securities, and the net income thereof, less an allowance of One hundred Dollars per year, which may be paid into the Treasury of said University for the general purposes of the University, by way of compensation to the said University for the administration of said fund, shall be paid to a

student in the Women's College of said University, a graduate of the Public School, known as the 'COMMODORE MACDONOUGH SCHOOL', located at the Town of St. Georges, Red Lion Hundred, New Castle County, State of Delaware. The fund directed to be paid to the Trustees of the University of Delaware shall be known as the 'Harriott E. Higgins Scholarship Fund of the Commodore Macdonough School', and the net income thereof shall be paid, as hereinbefore and hereinafter directed, to a young, white, female student of said Commodore MacDonough School, graduating therefrom, and the selection of the candidate for such Scholarship shall be made by the President of the Teaching Staff of said University in collaboration with the local Board of Trustees and the Teaching Staff of said Commodore MacDonough School under rules and requirements laid down by them; such Scholarship may be awarded for the full Academic course of four years, leading to a Degree in said College and no longer, and may be awarded to any deserving candidate, excepting that the young woman is not to be selected from a family with ample means without the assistance of said fund to pay for the maintenance and tuition of the candidate in said University."

The trustees so–named have administered the trust in question since 1942 as directed by the testatrix. However, on July 31, 1979, they filed this action for reformation of said trust, seeking, first of all, to have removed from its terms the discriminatory language contained therein based on race in order that the scholarship fund might be administered in conformity with the Nation's as well as the University's policy against discrimination on such basis.

Such relief having been granted,[1] there remains for resolution respondent's counter–petition for further reformation, respondent now seeking to have the trust in question further reformed so that qualified males as well as females may also be deemed eligible to receive the scholarship monies here in issue.

While the racial and gender restrictions contained in the trust here in issue contravene the University's policy against discrimination on the basis of race or sex, the University has felt constrained to honor the testatrix's wishes that scholarship money be granted solely to qualified women so long as it is legally possible so to do inasmuch as it is apparent from the language employed that the testatrix clearly intended to assist only qualified women to gain a college education.

The issue thus presented is whether or not the Trustees of the University of Delaware may constitutionally[2] administer a scholarship restricted to women under the terms of a charitable testamentary trust.

■■■ To begin with, I am satisfied that the administration of the trust here in issue must be deemed state action.[3] See general-

1. On November 21, 1979, this Court ordered that the word white be deleted from the testamentary language of the will of Harriott E. Higgins and that the Harriott E. Higgins Scholarship be awarded to otherwise qualified candidates regardless of race.

 Furthermore, authorization was given petitioner to defer the awarding of the scholarship until graduation from secondary school and to permit the award of said scholarship to qualified female candidates of the William Penn High School in light of recent changes in the area's educational system. Such latter authorization was granted by order of December 20, 1979.

2. *See generally* Note, Sex–Restricted Scholarships and the Charitable Trust, 59 Iowa L.Rev. 1000 (1974); Note, Restricted Scholarship,

State Universities and the Fourteenth Amendment, 56 Va.L.Rev. 1454 (1970); Comment, An End to Gender–Restrictive Charitable Trust: An Idea Whose Time Has Almost Come? 48 U.M.K.C. L.Rev. 66 (1979).

3. While the equal protection provision of the fourteenth amendment to the United States Constitution does not apply to purely private trusts, where government or state action is inextricably intertwined with the administration of such a private trust, the fourteenth amendment becomes applicable. See *In re Will of Potter*, Del.Ch., 275 A.2d 574, 583 (1970) citing *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954); *Evans v. Abney*, 396 U.S. 435, 90 S.Ct. 628, 24 L.Ed.2d 634 (1970); and *Pennsylvania v.*

ly 14 Del.C.Chaps. 51–57, *Parker v. University of Delaware*, Del.Ch., 75 A.2d 225 (1950), and *University of Delaware v. Keegan*, Del.Ch., 318 A.2d 135 (1974), rev'd on other grounds, Del.Supr., 349 A.2d 14 (1975), cert. denied, 425 U.S. 945, 96 S.Ct. 1689, 48 L.Ed.2d 190 (1976). Thus, respondent argues that the gender restriction favoring women in the express terms of the trust here in issue should be stricken on the ground that such restriction violates the equal protection clause of the fourteenth amendment to the constitution of the United States and that the trust instrument must therefore be reformed so as to eliminate from it language which purports to permit discrimination on the basis of sex under the doctrine of cy pres or that of deviation.

Recent decisions of the Supreme Court of the United States have established that government, whether local, state or national will not be permitted to administer a charitable gift which seeks to require named trustees to discriminate on the basis

of race or religion. See Annotation, 25 A.L.R.3d 736 "Validity and Effect of Gift for Charitable Purposes Which Excludes Otherwise Qualified Beneficiaries Because of Their Race or Religion". However, there appears to be no case which holds that a charitable trust is violative of the fourteenth amendment, the terms of which purport to require trustees to discriminate on the basis of sex regardless of the existence of State action.[4] Thus, the decisions concerned with the so-called Girard College Trust[5] which was created for the benefit of poor male white orphans under the will of Stephen Girard, did not address the issue of whether or not the testator could dispose of his property for the exclusive benefit of males under the terms of a trust administered by the Board of City Trusts, the sole concern of the courts being that of the validity or invalidity of the racially restrictive testamentary language employed.[6]

■ However, in the absence of a constitutional provision outlawing sexual discrimination,[7] governmental classifications distin-

*Brown*, 392 F.2d 120 (3rd Cir.), cert. den'd 391 U.S. 921, 88 S.Ct. 1811, 20 L.Ed.2d 657 (1968).

**4.** Cf. *Shapiro v. Columbia Union National Bank and Trust Company*, 576 S.W.2d 310 (Mo.1978) where a female law student at the University of Missouri brought an action alleging that she was denied an opportunity to apply for and be considered for financial aid from a charitable trust established to assist resident "boys", who possess unusual ability or talent and who are financially unable to obtain a university education. The Missouri Court of Appeals invalidated the restriction as discriminatory, but the decision was overturned on appeal. The Missouri Supreme Court held that neither the equal protection clause nor the Civil Rights Act were violated when a private individual established a charitable trust administered privately because there was insufficient governmental involvement to constitute state action.

**5.** *In re Girard's Estate*, 386 Pa. 548, 127 A.2d 287, *Com. of Pennsylvania v. Board of Directors of City Trusts of City of Philadelphia*, rev'd 353 U.S. 230, 77 S.Ct. 806, 1 L.Ed.2d 792 reh. denied, 353 U.S. 989, 77 S.Ct. 1281, 1 L.Ed.2d 1146 (1956), appeal dism'd 357 U.S. 570, 78 S.Ct. 1383, 2 L.Ed.2d 1546 (1957); *In re Girard College Trusteeship*, 138 A.2d 844, 391 Pa. 434 (Pa.Supr.) appeal dis'd, *Com. of Pennsylvania v. Board of Directors of City Trusts of City of Philadelphia*, 357 U.S. 570, 78 S.Ct. 1383, 2 L.Ed. 1546 reh. den'd, 358 U.S. 858, 79

S.Ct. 14, 3 L.Ed.2d 92 (1958); *Commonwealth of Pennsylvania v. Brown*, 392 F.2d 120 (3rd Cir.) cert. den'd, 391 U.S. 921, 88 S.Ct. 1811, 20 L.Ed.2d 657 (1968).

**6.** See also *Howard Sav. Institution v. Peep*, 34 N.J. 494, 170 A.2d 39 (1961) (trust for American-born Protestant, Gentile boys); *Moore v. Denver*, 133 Colo. 190, 292 P.2d 986 (1956) (trust for the benefit of "poor, white male orphans"); *Shannon v. Eno*, 120 Conn. 77, 179 A. 479 (1935) (gift for "worthy, Protestant women over 60 years of age"); *Averill v. Lewis*, 106 Conn. 582, 138 A. 815 (1927) (trust for "white, Protestant Female Teachers"); *Beardsley v. Bridgeport*, 53 Conn. 489, 3 A. 557 (1886) (bequest for the benefit of "worthy, deserving, poor, white, American, Protestant, Democratic widows and orphans residing in the Town of Bridgeport, Connecticut").

**7.** The adoption of the proposed equal rights amendment to the U. S. Constitution would mandate the use of a strict judicial scrutiny standard in cases of alleged sexual discrimination.

The courts of Massachusetts, a state which has adopted an equal rights amendment to its state constitution, recently addressed the issue of whether a public charitable trust may constitutionally discriminate against women. The Supreme Judicial Court of Massachusetts, al-

guishing the respective prerogatives of males and females are subject to scrutiny under the equal protection clause of the fourteenth amendment, *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), and *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).

In early cases before the Supreme Court of the United States in which discrimination on a gender basis as a violation of the equal protection clause was charged, the challenged governmental restriction was subjected to a test of reasonableness. In other words, the legislatively–created class would generally be sustained if the restriction was rationally related to a legitimate governmental interest and was not patently arbitrary. For example, in *Reed v. Reed*, supra, the Supreme Court of the United States, struck down a mandatory provision of the Idaho probate code giving preference to men over women when persons of the same entitlement class applied for appointment as administrators of a decedent's estate. The Court defined the appropriate level of scrutiny to be employed as follows:

> "The Equal Protection Clause ... den(ies) to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."

On the basis of the test of reasonableness very few governmental restrictions have been invalidated. Challenged on such a basis, a statute appears to be constitutional, *Justice v. Galchell*, Del.Supr., 325 A.2d 97 (1974), and *Mayor and Council of City of Dover v. Kelly*, Del.Supr., 327 A.2d 748 (1974), and it is not difficult for government to conjure up ex post facto an objective to which the restriction reasonably relates.

On occasion, the Supreme Court of the United States has sustained gender discrimination in situations in which the Court has viewed such discrimination as benign. Thus, challenged statutes which favor women have been upheld as compensatory where it has been demonstrated that their purpose was to counterbalance discrimination which has been suffered by women in the past. An example of this line of thought is found in the decision of *Schlesinger v. Ballard*, 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975), in which the Court rejected a male officer's challenge to a system of promotion which accorded women officers a thirteen year tenure before mandatory discharge for failure to earn a promotion, while requiring men to be discharged after they had been twice passed over for a promotion even though thirteen years had not elapsed since a promotion. The majority opinion was of the view that the relaxation of the military promotion requirement for women was reasonable in light of the demonstrable fact that male and female line officers in the Navy of the United States are not similarly situated with respect to opportunities for professional service. Thus, the different naval discharge requirements were designed to rectify the effects of past discrimination against women, a significant governmental objective, and thus was considered benign.

Recent Supreme Court decisions lead one to the conclusion that when governmental action directly addresses discrimination and serves to remedy it, disparate treatment of the sexes, at least as an interim measure, will be upheld as constitutional, *Califano v. Webster*, 430 U.S. 313, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977).

Sexual discrimination in higher education has existed for many years. With the passage of Title IX of the Education Amendments of 1972, 20 U.S.C. section 1681, Congress recognized the importance of the adoption of a legislative policy in the area

---

though grounding its decision on an interpretation of the term "man" as implying the generic sense, indicated as an afterthought that the

State equal rights amendment would produce a similar result.

of non–discrimination on the basis of sex, such legislation having constituted an attempt to remedy to some extent sex discrimination in education, and although progress has been made, equality of opportunity for both sexes has not been achieved.

 The primary purpose of the Higgins' gift in trust to the University of Delaware is clearly to assist financially poor women who would be otherwise denied an equal educational opportunity at the college level, and the scholarship fund in question is but a small part of the University of Delaware's financial aid program, which is based on equal opportunity. The university distributes scholarship funds under its own policy of non–discrimination on the basis of race or sex and the mandate of Title IX of the Education Amendments of 1972, supra. The purpose of these policies is to reduce the existing disparity in educational opportunities afforded men and women. I conclude, in light of the above, that the benign discrimination set forth in the Higgins' scholarship fund does not subvert equal opportunity, but rather promotes it by compensating for past acts of discrimination.

Until such time that the objective of Harriott E. Higgins as well as the governmental policy of sexual equality in opportunities for higher education are achieved, the University of Delaware, in my opinion, should in a case such as the one at bar be free to distribute the scholarship funds here in issue in such a manner as to compensate for past and present inequalities in educational opportunities arising from discrimination based on sex.

Finding that there are no material facts in dispute, judgment as a matter of law is appropriate. Petitioner's motion for summary judgment will be granted and judgment for respondent denied.

A form of order to such effect may be submitted on notice.